**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOEL MURRAY,

                                        Plaintiff,

          - v -                                              Civ. No. 9:03-CV-1263
                                                                  (LEK/RFT)

GEORGE E. PATAKI, Governor of New York State;
M.D. KANG LEE; DANIEL SENKOWSKI, Superintendent
of Clinton Correctional Facility; DR. MELENDZ; R. LEDUC,
Corrections Officer; N. IRWIN; J. TRAVERS; J. FORTH,
Corrections Officer; S. JONES; R. GIRDICH, Superintendent
at Franklin Correctional Facility; GLENN S. GOORD,
Commissioner of N.Y.S. D.O.C.S.; RICHARD ROY, Inspector
General; T. REIF, Corrections Officer; and CNY PSYCHIATRIC
CENTER,[1]

                                        Defendants.

**APPEARANCES:**                                         **OF COUNSEL:**

JOEL MURRAY
Plaintiff, *Pro Se*
00-A-1884
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. ANDREW M. CUOMO                                     JEFFREY P. MANS, ESQ.
Attorney General for the State of New York              Assistant Attorney General
Attorney for Defendants Pataki, Leduc, Irwin,
Travers, Forth, Jones, Goord, Roy, Reif, and
CNY Psychiatric Center
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] Defendants Lee, Senkowski, Melendz, and Girdich have not been served with the Second Amended
Complaint in this action and have not appeared in any capacity.

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Joel Murray brings a civil action pursuant to 42 U.S.C. § 1983 against numerous Defendants alleging violations of his rights under federal and state law.  *See* Dkt. No. 10, Second Am. Compl.[2]  In particular, Plaintiff alleges that: 1) Defendant Goord violated his constitutional rights when a) he failed to provide him with "Halal" meals pursuant to his religious beliefs as a Muslim in the same manner as inmates who are Jewish receive kosher meals;[3] and he was grossly negligent in supervising, managing, and training his subordinates when he b) failed to protect him from another person who threw bodily fluids on Plaintiff on August 5, 2001, and did not provide medical treatment as a result of this assault; c) failed to protect him from retaliation by subordinates at the Franklin Correctional Facility ("Franklin") by keeping him in the "HUB" system;[4] d) failed to prevent corrections officers from writing false misbehavior reports, retaliating against him, and conspiring to obstruct justice, and failed to remedy a program that allowed racial profiling; e) allowed Defendant Senkowski to have someone remove asbestos from the Clinton Correctional Facility ("Clinton") culminating in medical problems for Plaintiff; f) allowed others to overcharge Plaintiff for his first class mail and censor-privileged mail; g) failed to stop C.O. Leduc from writing a false misbehavior report on August 5, 2001, and retaliating against him; and h) failed to address medical issues when he was not properly treated by Defendant Lee during the period of

---

[2] The Court assumes that all parties are aware of the extensive procedural history in this case.

[3] Plaintiff brings his religious dietary claim under the Due Process Clause of the Fourteenth Amendment as well as under the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*  *See* Dkt. No. 10, Second Am. Compl. at ¶ 46; Dkt. No. 96, Pl.'s Mem. of Law at pp. 11-20.  Plaintiff also brings a state law cause of action against Goord relating to the denial of his "Halal" meals.  Second Am. Compl. at ¶ 47.

[4] From what the Court can discern, the "HUB" system is a set of different correctional facilities in certain geographical locations.  *See* http://www.docs.state.ny.us/facilitymapbw.pdf.

April 2001 through August 23, 2002; 2) Defendant Central New York Psychiatric Center

("CNYPC") violated his rights by being grossly negligent in its management, training, and

supervision of Dr. Melendz and other Department of Corrections staff at Clinton when a) Plaintiff

was kept under inhumane conditions in the "Satellite Unit;" and b) excessive force was used against

him to administer antipsychotic drugs; and 3) Defendant Roy violated Plaintiff's Fourteenth

Amendment rights by failing to protect him and transfer him from the "HUB" system when other

corrections officers placed weapons in his possession, threatened him, retaliated against him, and

were deliberately indifferent to his health and safety. *Id.* at ¶¶ 36, 40-47, & 50-51. Defendants

Goord, CNYPC, and Roy bring this Motion to Dismiss.[5] Dkt. No. 81. Plaintiff opposes the Motion.

Dkt. No. 96. For the reasons to follow, it is recommended that the Motion to Dismiss be **granted in**

**part and denied in part**.

## I. FACTS

The following facts were derived from the Second Amended Complaint, which must be

taken as true per the motion to dismiss standard.[6] *See infra* Part II.A. On March 14, 2001, while

incarcerated at Franklin, Corrections Officer Forth placed a weapon in Plaintiff's possession in

retaliation for filing grievances and a claim against the "Corcraft Industry." Second Am. Compl. at

¶ 18.

In April 2001, while housed at Clinton, Dr. Lee discontinued Plaintiff's prescription of

Flexril and did not properly treat any of his medical conditions, including "[b]lood, [k]idney, back,

---

[5] As only Defendants Goord, CNYPC, and Roy bring this Motion to Dismiss, the Court will not discuss any of the other causes of action brought against any other Defendants. *See* Dkt. No. 81, Notice of Mot.

[6] Although only Defendants Goord, CNYPC, and Roy bring this Motion to Dismiss, the Court will reference any of the facts set forth in the Second Amended Complaint against other Defendants in order to gain a full understanding of the claims brought against Goord, CNYPC, and Roy.

leg, and head injuries." *Id.* at ¶ 19.  Then on August 5, 2001, as Plaintiff went to the yard, the

Superintendent allowed another inmate to throw bodily fluid upon Plaintiff and refused to provide

him with medical attention.  *Id.* at ¶ 20.  The same day, Corrections Officer Leduc issued Plaintiff a

Misbehavior Report ("Report") for "allegedly" disobeying an order.  *Id.* at ¶ 21.  This Report was

written after a grievance was filed against Leduc in July 2001.  *Id.*

Subsequently, on April 1, 2002, Plaintiff was sent to the Satellite Unit at Clinton and, while

confined within this Unit, corrections officers threw "their body waste in [Plaintiff's] food and cell,"

made him eat with his hands, did not give him a shower, and "subjected [him] to lay on a dirty bug

infested floor." *Id.* at ¶ 22.  Additionally while in this Unit, Plaintiff, occasionally, did not receive

his meals.  *Id.*  Plaintiff brought these incidences to the attention of Dr. Melendz and others, but

nothing was done.  *Id.*  Instead, Dr. Melendz ordered corrections officers to use physical force

against him so that she could inject a needle into Plaintiff.  *Id.*  When Plaintiff was "discharged"

from this Unit, all of his privileged legal mail was opened without his consent.  *Id.*

Sometime during Plaintiff's incarceration at Clinton, Defendant Senkowski, without the

proper permit or approval, had someone remove asbestos from the facility.  *Id.* at ¶ 23.  In response,

Plaintiff submitted a grievance and "signed-up" for sick call as the dust from the air vents caused

him to feel sick from April 2001 until August 2002.  *Id.*

Subsequently, Defendant Goord had Plaintiff transferred back to Franklin.  *Id.* at ¶ 24.  From

August 23, 2002 until September 6, 2002, Plaintiff was called a "Nigger living in a white man's

world."  *Id.*  Plaintiff was threatened that he would be killed if he stayed in that prison but Goord

kept Plaintiff in the "HUB" system after being directly informed of the situation, thus subjecting

him to physical peril.  *Id.*  From September 2002 until February 2003, Goord and "his

*-4-*

[s]ubordinates" censored his incoming and outgoing legal mail. *Id.* at ¶ 25. As a result of the censoring, Plaintiff lost his direct appeal of his conviction in the New York State Appellate Division, First Department, and procedurally defaulted in an action brought in the New York State Court of Claims. *Id.*

On February 13, 2003, while incarcerated at the Bare Hill Correctional Facility, Plaintiff told Law Library Officer Reif that his cane was missing. *Id.* at ¶ 26. Reif proceeded to file a Report against Plaintiff for losing state property. *Id.* During his Hearing on the Report, Plaintiff called an inmate witness who testified that another inmate who worked for Reif was in possession of the cane. *Id.* Then in September 2003, Goord and his subordinates failed to provide Plaintiff with "Halal" meals since he is a practicing Muslim. *Id.* at ¶ 28. Proper meals were provided to those who were of the Jewish faith. *Id.*

Plaintiff further states that Defendant Roy, Inspector General for the Department of Corrections, failed to protect Plaintiff from "[w]hite racist" corrections officers who racially profiled black inmates at Bare Hill and used "racially motivated discriminatory tactics against minority inmates." *Id.* at ¶ 29. Plaintiff avers that Roy refused to help protect his health and safety from officers in this "HUB" system and that he did not allow any inmates to file criminal charges against corrections officers in the State of New York. *Id.*

## II. DISCUSSION

### A. Motion to Dismiss Standard

Upon a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint "only if 'it appears beyond [a] doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Equal Employment Opportunity Comm'n v. Staten*

*Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) & citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998)); *see also Green v. New York State Dep't of Corr. Servs. et al.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). However, the court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nevertheless, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green v. New York State Dep't of Corr. Servs. et al.*, 2003 WL 22169779, at *1 (internal quotation marks and citations omitted) (alterations in original).

Moreover, pleadings submitted by *pro se* litigants "should be 'construed liberally,'" and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (internal citations omitted). A "dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Id.* at 128.

### B.  Personal Involvement and Supervisory Liability

Plaintiff claims that Defendant Goord did not provide him with "Halal" meals.  Second Am.

Compl. at ¶¶ 46 & 47.  He further asserts that Goord and CNYPC were grossly negligent in failing to manage, train, and supervise subordinates while constitutional violations were occurring and that Defendant Roy failed to protect him against other corrections officers by not taking any action against these individuals.  *Id.* at ¶¶ 36, 40-45, & 51.  Defendants assert Plaintiff has failed to allege any personal involvement by any of the Defendants and that Plaintiff cannot rely on a theory of *respondeat superior* to impose liability.  Dkt. No. 81, Defs.' Mem. of Law at pp. 5-7.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement.  Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control."  *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (emphasis in original) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  In addition, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional

> violation, or allowing such a policy or custom to continue, 4) grossly negligent
> supervision of subordinates who committed a violation, or 5) failure to act on
> information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

Specifically, if a prisoner claims that a supervisory official failed to train or supervise subordinates because of gross negligence, "supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross or deliberate indifference by failing to act." *Talibon v. Sullivan*, 1990 WL 102220, at *7 (S.D.N.Y. July 12, 1990) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)).

## 1.  Defendant Goord

In this case, Plaintiff has failed to allege any facts that Goord was personally involved in any constitutional violation, including his assertion that Goord violated his First and Fourteenth Amendment rights by failing to provide him with a "Halal" meal plan.  *See* Second Am. Compl. at ¶¶ 18-21, 23-29, 36, & 40-47.  In support of Plaintiff's position that Goord was aware of the situations and therefore was personally involved, Plaintiff submits several letters written either by Deputy Commissioner Lucien Leclaire, Jr., Captain Carey, or Deputy Commissioner for Program Services John Nuttall on behalf of Goord.  Dkt. No. 96, Pl.'s Aff., dated July 6, 2006, Exs. A-1-A-6. Since these letters were not attached as Exhibits to the Second Amended Complaint, generally the Court cannot consider matters outside the pleadings.  *See supra* Part II.A.  However, even though Plaintiff does not make reference to any of these letters in his Second Amended Complaint, as Plaintiff himself provided the Court with the letters and Defendants have not objected to the inclusion of them, there is no prejudice to either party.  Thus, because the letters may be integral in deciding the question of personal involvement, the Court has reviewed the documents and finds

them immaterial as to the question of personal involvement by Goord.  *Id.*  These letters in response to Plaintiff's inquiries and requests were not sent by Goord nor do they show that Goord personally committed a constitutional violation against him.  *See generally Lyerly v. Phillips*, 2005 WL 1802972, at *7 (S.D.N.Y. July 29, 2005) (stating that "[r]eceipt of letters, grievances, or complaints from inmates is insufficient to impute personal involvement (citations omitted)); *see also Liner v. Goord*, 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004) (holding that "[w]here a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action").

Plaintiff, nevertheless, seeks to hold Goord liable based on supervisory liability.  *See* Second Am. Compl. at ¶¶ 36 & 40-45.  As stated previously, Plaintiff alleges that Goord was grossly negligent in managing, training, and supervising his subordinates when he a) failed to protect him when another person threw bodily fluids on Plaintiff on August 5, 2001, and did not provide medical treatment as a result of this assault; b) failed to protect him from retaliation by subordinates at Franklin by keeping him in the "HUB" system; c) failed to prevent corrections officers from writing false misbehavior reports, retaliating against him, and conspiring to obstruct justice, and failed to remedy a program that allowed racial profiling; d) allowed Defendant Senkowski to have someone remove asbestos from Clinton culminating in medical problems for Plaintiff; e) allowed others to overcharge Plaintiff for his first class mail and censor-privileged mail; f) failed to stop C.O. Leduc from writing a false misbehavior report on August 5, 2001, and retaliating against him; and g) failed to address medical issues that he was not properly treated by Defendant Lee during the period of April 2001 through August 23, 2002.  *Id.*

**a.  Bodily Fluids**

In terms of Plaintiff's first claim, Plaintiff avers that on August 5, 2001, while walking to the yard from SHU at Clinton, Goord's subordinates refused to help him after inmate Robert Issac threw bodily waste upon him and he did not receive any medical attention after the incident. Second Am. Compl. at ¶¶ 20 & 36.  First of all, the Court cannot discern the extent of Goord's purportedly grossly negligent supervision since Plaintiff does not name any corrections officers or other personnel who were present at the time of the incident as to whom Goord failed to supervise. Second, the Court cannot fathom what constitutional violation was committed by any potential subordinates, let alone Goord.  Failing that, all Plaintiff alleges is that he was not protected and he was denied medical treatment.

The Eighth Amendment imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted).  Nonetheless, prison officials may not be constitutionally liable for every injury an inmate suffers at the hands of other inmates.  *Id.* at 834.  A plaintiff may recovery for injuries received while in custody "if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. at 834).  However, "[a]n isolated omission to act by the state prison guard does not support a claim under section 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (quoting *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)).  Furthermore, "an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the

correctional official can be charged with deliberate indifference." *Sims v. Bowen*, 1998 WL 146409,

at \*3 (N.D.N.Y. Mar. 23, 1998).  Here, there is absolutely no indication that Plaintiff had any

problem with this particular inmate or that any correctional officer was informed by Plaintiff that

this inmate posed a threat to his safety.  *See* Second Am. Compl.

As to Plaintiff's claim regarding medical attention, "[i]n order to establish an Eighth

Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate

indifference to [his] serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003)

(internal quotation marks and citations omitted) (alteration in original).  Thus, Plaintiff must initially

establish that he has a "serious illness or injury[.]" *Estelle v. Gamble*, 429 U.S. 97, 105 (1976);

*Smith v. Carpenter*, 316 F.3d at 184.  Some factors that determine whether a prisoner's medical

condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical

need in question as important and worthy of comment or treatment, 2) whether the medical

condition significantly affects daily activities, and 3) the existence of chronic and substantial pain."

*Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations

omitted) (noting that an inmate is not required to show "that he or she experiences pain that is at the

limit of human ability to bear, nor [does the Court] require a showing that his or her condition will

degenerate into a life- threatening one).

Moreover, the prisoner has to show "more than an inadvertent failure to provide adequate

medical care by prison officials to successfully establish Eighth Amendment liability." *Smith v.

Carpenter*, 316 F.3d at 184 (internal quotation marks and citation omitted).  Prison officials act with

deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or

safety; the official[s] must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. at 837).

Here, Plaintiff generally claims that he has blood, kidney, back, leg, and head injuries, though he does not attribute any of these occurring as a result of the incident.  Second Am. Compl. at ¶¶ 19 & 20.  Furthermore, there is no indication whether a doctor was treating any of these alleged illnesses and/or injuries, if they significantly affect his daily activities, or if there is the existence of chronic and substantial pain as a result.  Even if a serious illness/injury was established, there are no facts to show deliberate indifference by corrections officers whereby they may have known of and then disregarded an excessive risk to Plaintiff's health and safety.  The incident did not involve any type of medical emergency that would necessitate a visit with a doctor or nurse.  Nor does Plaintiff point to any medical condition which needed treatment because of this incident.

Thus, Plaintiff has failed to establish that Goord was grossly negligent in his supervision of unknown subordinates, especially since no constitutional violation arose from this incident and it is recommended that the Motion to Dismiss be **granted** as to Plaintiff's Fourth Cause of Action.  Second Am. Compl. at ¶ 36.

### b.  "HUB" System

Plaintiff alleges Goord was grossly negligent in his supervision of subordinates at Franklin when the subordinates retaliated against him by placing a weapon in his cell after the filing of grievances and when, from August 23, 2002 until September 6, 2002, they made racial comments by telling him he was a "Nigger living in a white man's world" and made threats that he would be

killed.[7]  *Id.* at ¶¶ 24 & 40.  He claims that he was kept in the "HUB" system even after Goord was

informed of these circumstances.  *Id.* at ¶ 40.

In terms of the retaliation claim, Plaintiff alleges that on March 14, 2001, while at Franklin,

Corrections Officer Forth placed a weapon in his possession, though how and where is unclear, and

then Sergeant Irwin and Lieutenant Travers authorized sending him to SHU.[8]  *Id.* at ¶ 18.  Because

of these minimal facts provided, it is difficult to state at this juncture whether the subordinates may

have committed a constitutional violation since Plaintiff does not present any facts as to when the

grievances were filed in relation to when the weapon was placed in his possession.  *Id.*; *see also Gill*

*v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004); *Bennett v. Goord*, 343 F.3d 133, 137-39 (2d

Cir. 2003).  Thus, it is possible if Goord was somehow informed of the incident that there could

potentially be grossly negligent supervision of these three subordinates if a constitutional violation

were to have occurred.

Notwithstanding, once again, Plaintiff fails to state which subordinates were involved in

making racial comments and threats.  Second Am. Compl. at ¶ 24.  Nevertheless, if had Plaintiff

named the subordinates who made racial comments and threats, it is well settled law in this Circuit

that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse."  *Gill v. Hoadley*, 261

F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66

(W.D.N.Y. 1996)); *Petway v. City of New York*, 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005);

*Larocco v. N.Y. City Dep't of Corr.*, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001).  Thus,

---

[7] Plaintiff asserts that the statement "Nigger living in a white man's world" constitutes racial profiling.  Second Am. Compl. at ¶ 24.

[8] It is unclear from the face of the Second Amended Complaint whether Plaintiff was sent to SHU for violating a prison rule against possessing a weapon or if there was some other offense committed that caused him to be placed in SHU.  *See* Second Am. Compl. at ¶ 18.

"verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial statements and threats is not actionable under § 1983.  Second Am. Compl. at ¶¶ 24 & 40.  Furthermore, Plaintiff did not allege any physical injury as a result of the statements and threats.  *See* 42 U.S.C. § 1997e; *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. at 474 (noting that there was no physical injury accompanied with the verbal taunting and therefore no constitutional violation was alleged). Therefore, Plaintiff's claim is not actionable under 42 U.S.C. § 1983 and no subordinates could have committed a constitutional violation.

Accordingly, it is recommended that the Motion to Dismiss be **granted in part** as to Plaintiff's Eighth Cause of Action in regards to the failure to supervise claim of verbal harassment and threats but **denied** with regard to Plaintiff's claim for retaliation.  Second Am. Compl. at ¶ 40.[9]

### c.  False Reports, Retaliation, Conspiracy, and Racial Profiling

Plaintiff claims that Goord was grossly negligent in supervising his subordinates when corrections officers wrote false misbehavior reports, retaliated against him for filing grievances, and conspired to obstruct justice. *Id.* at ¶ 41.  Allegedly Goord also failed to prevent racial profiling. *Id.*

---

[9] The Court further notes that Plaintiff would have no constitutional right to be transferred from one "HUB" to another. *See generally Green v. New York State Dep't of Corr. Servs.*, 2003 WL 22169779, at *4 (N.D.N.Y. Aug. 27, 2003).

However, Plaintiff does not specify which events and which subordinates committed the infraction since he indicates this particular cause of action stems from all the factual averments made in the Second Amended Complaint.  *Id.* at Ninth Cause of Action.  This cause of action clearly does not arise from all of the factual allegations in the case since some of facts clearly do not pertain to misbehavior reports, retaliation, conspiracy claims, or racial profiling.  *See generally* Second Am. Compl.

There are three instances when Plaintiff asserts that there were false misbehavior reports filed and/or there was retaliation against him.  *Id.* at ¶¶ 18, 21, & 26.  One of these instances was already discussed in the retaliation claim dealing with Corrections Officer Forth.  *Id.* at ¶¶ 18 & 40; *see supra* Part II.B.1.b.  Another instance is addressed in Plaintiff's Twelfth Cause of Action that pertains to C.O. Leduc.  Second Am. Compl. at ¶¶ 21 & 44; *see infra* Part II.B.1.f.  It is only the third instance which has any bearing on his Ninth Cause of Action.  Second Am. Compl. at ¶¶ 26 & 41.  In this third instance, Plaintiff claims that on February 13, 2003, at the Bare Hill Correctional Facility, Law Library Corrections Officer T. Reif issued a false Misbehavior Report to him for losing state property.  *Id.* at ¶ 26.  Plaintiff alleges this Report was written after he filed a grievance against the law library.  *Id.*  Plaintiff does provide the Court with the Superintendent's and Central Office Review Committee's ("CORC") review of one grievance filed at Bare Hill, but it does not seem to pertain to the law library.  Pl.'s Aff., Exs. 17, Superintendent's Review, dated Oct. 17, 2002, & 18, CORC Review, dated Dec. 11, 2002.[10]  Because the Court is not sure as to whether Plaintiff speaks to this grievance since the Court is unaware of the contents of the grievance, it is

---

[10] Because Plaintiff refers to a grievance filed against the law library in his Second Amended Complaint and the documents are integral in deciding the claim of supervisory liability, the Court has reviewed them.  *See supra* Part II.A. However, the Court notes that a copy of the actual grievance was not submitted.

difficult to assess at this time whether the subordinate, C.O. Reif, may have committed a constitutional violation.  *Id.*; *see also Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004); *Bennett v. Goord*, 343 F.3d 133, 137-39 (2d Cir. 2003).

In terms of the false misbehavior report claim, the Second Circuit has held that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see Batista v. Goord*, 2005 WL 2179420, at *11 n.75 (N.D.N.Y. Aug. 28, 2005); *Pittman v. Forte*, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002).  Furthermore, if a prisoner is afforded the opportunity to have a hearing, "the filing of unfounded charges does not give rise to a *per se* constitutional violation actionable under § 1983."  *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman v. Rideout*, 808 F.2d at 953).  In addition, "[t]here must be more such as retaliation against the prisoner for exercising a constitutional right."  *Pittman v. Forte*, 2002 WL 31309183, at *5 (citing *Franco v. Kelly*, 854 F.2d at 588-590); *see also Boddie v. Schnieder,* 105 F.3d at 862; *Batista v. Goord*, 2005 WL 2179420, at *11 n.75.  Here, Plaintiff does aver that he had a Hearing based upon the Misbehavior Report.  However, he also alleges the Report was written in retaliation for filing the grievance.  Without more facts, the Court cannot determine if the subordinate committed a constitutional violation and the extent, if any, of Goord's supervisory involvement.

However, as to Plaintiff's claim of a conspiracy to obstruct justice, Plaintiff makes a conclusory allegation and does not provide any facts as to who entered into a conspiracy and how they were obstructing justice.  *See* Second Am. Compl.  Furthermore, in regards to the racial profiling, he again merely refers to the statement made by corrections officers that he is a "Nigger

living in a white man's world."  Second Am. Compl. at ¶ 24; *see supra* Part II.B.1.b. & note 7.

Plaintiff does not make any reference to any corrections officers or Department of Correctional

Services employees who made this statement or any others for the period of time mentioned

previously.  Furthermore, this type of verbal abuse or harassment does not constitute a constitutional

violation.  *See supra* Part II.B.1.b.  Thus, Goord could not be grossly negligent in his supervision of

unnamed subordinates as there was no constitutional violation arising from the verbal harassment or

conspiracy claims.

Accordingly, it is recommended that the Motion to Dismiss regarding the Ninth Cause of

Action be **granted in part** as to the verbal harassment and conspiracy to obstruct justice claims and

**denied in part** as to the retaliation claim lodged against C.O. Reif.  Second Am. Compl. at ¶ 41.

### d.  Asbestos Removal

Plaintiff asserts that Goord was grossly negligent in his supervision of Superintendent

Senkowski because Senkowski did not possess the proper authorization to remove asbestos from

Clinton and the removal caused health problems.[11]  *Id.* at ¶¶ 23 & 42.  Notwithstanding Plaintiff's

claim, failing to possess proper authorization forms to remove asbestos is not a constitutional

violation.  Moreover, Plaintiff does not state he did not receive treatment when he became ill due to

the removal.  *Id.*  Thus, there can be no grossly negligent supervision since there was no

constitutional violation.

Therefore, it is recommended that the Motion to Dismiss be **granted** as to the Tenth Cause

of Action.  *Id.* at ¶ 42.

---

[11] The Court notes that Senkowski has not appeared in the action.  *See supra* note 1 and *infra* Part II.C.

**e.  Mail**

Plaintiff asseverates that Goord was grossly negligent in his supervision of subordinates when from September 2002 until February 2003 Plaintiff's outgoing and incoming legal mail was censored and as a result, he lost his direct appeal of his current conviction and procedurally defaulted in the New York State Court of Claims.  *Id.* at ¶¶ 25 & 43.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  In order to state a claim for lack of access to the courts by interference with legal mail, "an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action."  *Cancel v. Goord*, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).  However, once again Plaintiff fails to name which subordinates censored his mail.  In this respect, it would be difficult to assess whether there was deliberate and malicious interference.  Furthermore, from the general and conclusory nature of the allegations made by Plaintiff, there is no basis that a constitutional violation occurred.[12]  Thus, Goord cannot be grossly negligent in supervising unknown subordinates since there is no basis that the subordinates committed a constitutional violation.

Accordingly, it is recommended that the Motion to Dismiss be **granted** as to the Eleventh Cause of Action.  Second Am. Compl. at ¶ 43.

---

[12] The Court notes that Plaintiff's direct appeal of his conviction was denied on the merits and not due to any procedural defects.  *See People v. Murray*, 760 N.Y.S.2d 837 (N.Y. App. Div. 1st Dep't 2003).

**f.  False Report and Retaliation by C.O. Leduc**

Plaintiff alleges that Goord was grossly negligent in supervising Corrections Officer Leduc where on August 5, 2001, while at Clinton, Leduc issued Plaintiff a Misbehavior Report in retaliation for filing a grievance in July 2001 against him.  *Id.* at ¶¶ 21 & 44.  Since Plaintiff has alleged that he engaged in constitutionally protected conduct and the proximity of the grievance and Misbehavior Report are close, the Court cannot fully assess at this juncture whether the subordinate, C.O. Leduc, may have committed a constitutional violation.  *Id.*; *see also Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004); *Bennett v. Goord*, 343 F.3d 133, 137-39 (2d Cir. 2003).  Thus, the Court cannot determine at this stage whether Goord was grossly negligent in his supervision of Leduc who may have committed a constitutional violation.

Therefore, it is recommended that the Motion to Dismiss be **denied** on the Twelfth Cause of Action.  Second Am. Compl. at ¶ 44.

**g.  Medical Treatment from April 2001-August 23, 2002**

Plaintiff asserts that Goord was grossly negligent in supervising Dr. Kang Lee who did not properly treat Plaintiff while he was incarcerated at Clinton for the period of April 2001 until August 23, 2002.[13]  *Id.* at ¶¶ 19 & 45.  However, Plaintiff's only factual averment regarding Dr. Lee is that in April 2001, he discontinued Plaintiff's prescription of Flexril and then did not treat his serious medical needs of blood, kidney, back, leg, and head injuries.  *Id.* at ¶ 19.

As noted previously, Plaintiff would first have to establish that he has a serious illness and/or injury.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Assuming this could be shown, Plaintiff would next have to prove that prison

---

[13] The Court notes that Lee has not appeared in the action.  *See supra* n. 1 and *infra* Part II.C.

officials "kn[ew] of and disregarded an excessive risk to [Plaintiff's] health or safety[.]" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 824, 837 (1994)).

A prisoner's disagreement with the form of treatment proscribed by medical personnel will not necessary implicate the Eighth Amendment. *Ifill v. Goord et al.*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) (citation omitted). Furthermore,

> disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment. Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).[14]

Additionally, "prison officials and medical personnel have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Id.* (internal quotation marks and citation omitted). In fact, if the medical treatment concerns "the care and safety of patients," then there is a "'presumption of correctness.'" *Id.* (quoting *Perez v. County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000)). Moreover, supervisory officials are entitled to "delegate medical responsibility to facility medical staff[] and

---

[14] When a prisoner is in essence claiming medical malpractice,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Estelle v. Gamble*, 429 U.S. at 106 & n.14).

If the malpractice involved "culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate indifference. *Id.* (quoting *Farmer*, 114 S. Ct. at 1980).

are entitled to rely on the opinion of medical staff concerning the proper course of treatment."

*Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183-84 (N.D.N.Y. 1996) (citations omitted).

Here, relying on the only factual averment provided, Plaintiff's disagreement over the medication, Flexril, does not implicate the Eighth Amendment as it is a medical judgment. *Ifill v. Goord et al.*, 2004 WL 1663994, at *3. Furthermore, Plaintiff's disagreement over whether he should be treated or not for his alleged injuries may not implicate the Eighth Amendment and may only constitute negligence at best. *Id.* In addition, medical personnel, such as Dr. Lee, have wide discretion in treating prisoners and because the medical treatment would concern Plaintiff's care presumption of correctness is given to Dr. Lee. *Id.* Notwithstanding, Plaintiff does not provide any facts as to how he did not receive proper treatment after April 2001. *See* Second Am. Compl. More importantly, there is no evidence that Goord was ever informed in any manner of Plaintiff's complaints about his medical treatment. *See generally* Pl.'s Aff., Exs. Moreover, Goord, as a supervisory official, is entitled to rely on the opinion of Dr. Lee concerning the proper course of treatment. Consequently, there can be no grossly negligent supervision since there was no constitutional violation.

Therefore, it is recommended that the Motion to Dismiss be **granted** as to the Thirteenth Cause of Action.

**2. Defendant CNYPC**

Plaintiff asserts CNYPC violated his rights by being grossly negligent in its management, training, and supervision of Dr. Melendz and other Department of Corrections staff at Clinton when a) Plaintiff was kept under inhumane conditions in the "Satellite Unit;" and b) excessive force was used to administer antipsychotic drugs. Second Am. Compl. at ¶ 50.

First of all, "the Central New York Psychiatric Center[,] . . . [as an institution, is an] arm[] of the state for Eleventh Amendment purposes and . . ., therefore, [is] absolutely immune from [P]laintiff's claims for monetary damages in this lawsuit." *Williams v. Mid-State Corr. Facility*, 2006 U.S. Dist. LEXIS 72645, at *1-2 (N.D.N.Y. Oct. 5, 2006) (citing *Will v. Michigan Dep't of Police,* 491 U.S. 58, 71 (1989) & *Waxter v. Roberts et al.,* 98-CV-0342 (N.D.N.Y. Jan. 19, 1999) (Kahn, J.) at docket no. 19 (adopting Report-Recommendation of Magistrate Judge Gustave J. DiBianco recommending dismissing DOCS from lawsuit due to Eleventh Amendment immunity)); *see also Aiken v. Nixon*, 236 F. Supp. 2d 211, 226-27 (N.D.N.Y. 2002); Second Am. Compl. at p. 19 §§ B-E.  Furthermore, and more importantly, because the Central New York Psychiatric Center is a state agency, as it is part of the New York State Office of Mental Health, an agency is not a "person" within the meaning of § 1983 and therefore is not subject to suit under that provision.  *See Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing, *inter alia*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).[15]

Therefore, it is recommended that the Motion to Dismiss be **granted** against Defendant CNYPC.

**3.  Defendant Roy**

Plaintiff claims that Roy violated his Fourteenth Amendment rights by failing to protect and transfer him from the "HUB" system when other corrections officers placed weapons in his possession, threatened him, retaliated against him, and were deliberately indifferent to his health and safety.  *Id.* at ¶ 51.

It seems that on at least two occasions in 2001, Plaintiff sent letters to the New York State

---

[15] *See generally* http://www.omh.state.ny.us/omhweb/facilities/cnpc/facility.htm.

Commission of Investigation ("Commission") regarding his complaints of retaliation and

misconduct at the Franklin and Clinton Correctional Facilities.  Pl.'s Aff., Exs. 12, Resp. Lt., dated

Oct. 24, 2001, & 13, Resp. Lt., dated Feb. 6, 2001.  Plaintiff received a response to one of his letters

from the Commission on February 6, 2001, stating that his complaint would be forwarded to New

York State Inspector General Roslynn R. Mauskopf.  *Id.*, Ex. 13, Resp. Lt., dated Feb. 6, 2001.  On

October 24, 2001, Plaintiff received a response to another letter sent to the Commission.  *Id.*, Ex.

12, Resp. Lt., dated Oct. 24, 2001.  This response stated that the complaint was referred to Roslynn

R. Mauskopf and Richard D. Roy.  *Id.*  On at least one occasion in 2002, Plaintiff sent a letter to the

Inspector General's Office of DOCS.  *Id.*, Ex. 16, Resp. Lt., dated Feb. 19, 2002.  On February 19,

2002, Plaintiff received a letter in return, which was not signed by any particular individual, stating

that the letter would be forwarded to the Office of the Deputy Commissioner for Correctional

Facilities.  *Id.*  Apparently at least two additional letters were sent to the Inspector General's Office

of DOCS in 2003.  *Id.*, Exs. 14, Mem., dated Mar. 13, 2003, & 15, Mem., dated Mar. 24, 2003.  The

responses to the two letters were sent to Plaintiff by Kenneth McLaughlin, Director of Operations at

the Inspector General's Office.  *Id.*, Exs. 14, Mem., dated Mar. 13, 2003, & 15, Mem., dated Mar.

24, 2003.  They both noted Plaintiff's letters were being referred to the facility superintendent for

review.  *Id.*, Exs. 14, Mem., dated Mar. 13, 2003, & 15, Mem., dated Mar. 24, 2003.[16]

     In no instance in this case can the Court discern how Roy was personally involved in any

constitutional violation.  It does not appear that Roy responded to any of Plaintiff's letters or took

---

[16] Although Plaintiff only generally states that the "matter was brought to the attention of the appropriate
alleged Officials," the Court will liberally construe that this statement in the Second Amended Complaint was a
reference to the letters described.  *See* Second Am. Compl. at ¶ 29.  Furthermore, since Plaintiff introduced the letters
and there was no objection by Defendants, neither the Plaintiff nor Defendants would be prejudiced.  Thus, the Court
has reviewed the Exhibits that pertain to Defendant Roy as they may be integral in deciding the question of personal
involvement.  *See supra* Part II.A.

any action in the matter.  Plaintiff received responses from other individuals, not Roy.  None of the alleged acts Plaintiff claims to have occurred were committed by Roy, and therefore, personal involvement has not been established.  Furthermore, Plaintiff does not bring a claim for supervisory liability against Roy.  *See* Compl. at ¶¶ 29 & 51.

Accordingly, it is recommended that the Motion to Dismiss be **granted** as to Roy for lack of personal involvement.

### C.  Non-Service of Defendants Lee, Senkowski, Melendz, and Girdich

As noted previously, Defendants Lee, Senkowski, Melendz, and Girdich have not been properly served with process in this action.  *See supra* note 1.  Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[17]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, dismissing the case without prejudice as to that defendant.  *Id.*

On February 6, 2004, Summonses were issued for these four Defendants.  The Summonses were returned unexecuted on June 14, 2004.  *See* Dkt. Nos. 25, 33, 34, & 38.  On August 3, 2004, for good cause shown, Plaintiff was granted an extension of time until September 30, 2004, to serve the Defendants who had yet to be properly served in this action, including the four mentioned.  Dkt. No. 49, Order, dated Aug. 3, 2004.  By the time this Court issued a Report-Recommendation and Order on February 28, 2005, recommending dismissal of all the Defendants, except Governor

---

[17] Pursuant to the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

Pataki, for failure to timely effectuate service of process, service still had not been effectuated upon Lee, Senkowski, Melendz, or Girdich.[18]  Dkt. No. 56, Report-Rec. and Order, dated Feb. 28, 2005. The District Court approved and adopted this Court's Report-Recommendation and Order in its entirety and entered judgment for the Defendants.  Dkt. No. 60, Order, dated Mar. 22, 2005. However, after an appeal of the decision, the Second Circuit vacated the judgment and remanded the case back to allow for the effectuation of service upon the individually named Defendants.[19]  Dkt. No. 65, Mandate, dated Oct. 17, 2005.

On November 21, 2005, this Court ordered that the time for service be extended until February 15, 2006, so that all possible attempts to serve the Defendants could be made.  Dkt. No. 66, Order, dated Nov. 21, 2005.  Two more extensions were granted after that time allowing service to be completed by April 30, 2006.  Dkt. Nos. 75, Order, dated Feb. 13, 2006, & 79, Order, dated Mar. 28, 2006.  Prior to the filing of the current Motion on April 3, 2006, service on some of the Defendants was effectuated.  Dkt. Nos. 69-71, 76, & 81, Mot. to Dismiss.  Subsequent to the filing of the Motion, service was effectuated upon some of the remaining Defendants, but the four Defendants at issue were not served.  *See* Dkt. Nos. 83, 84, 85, 90, & 94.  On June 28, 2006, this Court, once again, extended the time to serve process until August 31, 2006, for Defendants Lee, Senkowski, Melendz, and Girdich.  Dkt. No. 95, Order, dated June 28, 2006.  The Court ordered that General Counsel for DOCS advise the Clerk of the employment status and facility assignment of Lee, Senkowski, and Girdich, and upon receipt of the information, Summonses would be reissued

---

[18] The Report-Recommendation and Order addressed the substance of the claims against Governor Pataki and this Court recommended dismissal of Defendant Pataki.  Dkt. No. 56, Report-Rec. and Order, dated Feb. 28, 2005.

[19] The Second Circuit expressed no opinion as to the propriety of the dismissal of the claims against Defendant Pataki as such had not been raised on appeal.  Dkt. No. 65, Mandate, dated Oct. 17, 2005.

and the U.S. Marshal would make further attempts to serve these Defendants.  *Id.* at p. 3.  The Court further stated that because Counsel's Office stated that there was no DOCS employee named Dr. Melendz, Plaintiff was to provide the Court with information regarding the identity of Dr. Melendz. *Id.*

To date, after approximately seven months have passed since the last extension of time both Plaintiff and DOCS General Counsel have provided the Court with absolutely no information. Since the Second Circuit's Mandate, over a year has gone by and Plaintiff has been given numerous opportunities to properly effectuate service.  This case cannot exist in perpetuity.  Therefore, Plaintiff is hereby notified that he must file a letter providing information regarding the identity of Dr. Melendz by **April 20, 2007**.  **<u>PLAINTIFF IS WARNED THAT HIS FAILURE TO PROVIDE SUCH INFORMATION BY MARCH 23, 2007, WILL LEAD TO THIS COURT RECOMMENDING DISMISSAL OF THIS ACTION WITH PREJUDICE AGAINST DEFENDANT MELENDZ</u>**.  Furthermore, DOCS General Counsel is to advise the Clerk of the Court by **April 20, 2007**, of the employment status and facility assignments of Lee, Senkowski, and Girdich so that service may finally be effectuated.  DOCS General Counsel is also warned that **<u>FAILURE TO DO SO MAY LEAD TO SANCTIONS</u>**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion to Dismiss (Dkt. No. 81) be **GRANTED IN PART AND DENIED IN PART** consistent with this opinion; and it is further

**RECOMMENDED**, that Defendants CNYPC and Roy be **DISMISSED**; and it is further

**ORDERED**, that Plaintiff provide a letter to the Court by **April 20, 2007**, with information

*-26-*

as to the identity of Dr. Melendz, otherwise **Plaintiff is warned that his failure to provide such information by April 20, 2007, will lead to this Court recommending dismissal of this action with prejudice against Defendant Melendz**; and it is further

**ORDERED**, that DOCS General Counsel is to advise the Clerk of the Court by **April 20, 2007**, of the employment status and facility assignments of Lee, Senkowski, and Girdich so that service may be effectuated and **failure to do so may lead to sanctions**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   March 5, 2007
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge