**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOEL MURRAY,

                                        Plaintiff,

         - v -                                                    Civ. No. 9:03-CV-1263
                                                                        (GTS/RFT)

GEORGE E. PATAKI, *Governor of New York State*;
M.D. KANG LEE; DANIEL SENKOWSKI, *Superintendent of*
*Clinton Correctional Facility*; DR. MELENDZ;[1] R. LEDUC,
*Corrections Officer;* N. IRWIN; J. TRAVERS; J. FORTH,
*Corrections Officer*; S. JONES; R. GIRDICH, *Superintendent*
*at Franklin Correctional Facility*; GLENN S. GOORD,
*Commissioner of N.Y.S. D.O.C.S.*; T. REIF, *Corrections Officer*,

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JOEL MURRAY
Plaintiff, *Pro Se*
00-A-1884
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. ANDREW M. CUOMO                           ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for the Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

         *Pro se* Plaintiff Joel Murray brings this civil rights action pursuant to 42 U.S.C. §§ 1983,

1985, and 2000cc *et seq*., raising twenty-five (25) separate causes of action and praying for

---

[1] In his submissions, Plaintiff spells this Defendant's name as both "Melendz" and  "Melendez."  We will
assume that the correct spelling is "Melendez," and will refer to him as such.

injunctive relief and compensatory and punitive damages.  Dkt. No. 10, Second Am. Compl. (hereinafter "Compl.") at pp. 7-14.  Defendants Leduc, Travers, Irwin, Jones, Forth, Girdich, Senkowski, Reif, Lee, and Goord[2] have moved for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  Dkt. No. 135.  Plaintiff opposes the Motion.  Dkt. No. 140.  For the reasons that follow, it is recommended that the Defendants' Motion be **granted**.

## I. PROCEDURAL HISTORY

Plaintiff commenced this action by filing a Complaint on October 17, 2003.  Dkt. No. 1.  As per the Court's Order, Plaintiff filed an Amended Complaint on December 22, 2003.  Dkt. No. 10.  On June 14, 2004, Defendant Pataki filed a Motion to Dismiss.  Dkt. No. 30.  On February 28, 2005, the Court issued a Report-Recommendation recommending dismissal of the Complaint against Pataki on substantive grounds, and also dismissing Defendants Lee, Senkowski, Melendez, Leduc, Irwin, Travers, Forth, Jones, Girdich, Goord, Roy, Reif, and CNY Psychiatric Center for failure to serve.  Dkt. No. 56.  The District Court adopted that Report-Recommendation in its entirety.  Dkt. No. 60.  Plaintiff appealed the District Court's decision, and the Second Circuit Court of Appeals reversed the District Court's Order dismissing Defendants Lee, Senkowski, Melendez, Leduc, Irwin, Travers, Forth, Jones, Girdich, Goord, Roy, Reif, and CNY Psychiatric Center for failure to serve, but presumably left untouched the District Court's dismissal of Pataki.[3]  Dkt. No. 65, Mandate dated Aug. 26, 2005 (stating "[t]his Court expresses no opinion at this juncture as to the propriety of the district court's dismissal of Murray's claims against defendant George E. Pataki, which claims were dismissed for reasons other than defective service of process.").  On April 3, 2006, Defendants

---

[2] Defendant Dr. Melendez has not been served with process.  We discuss this issue in Part II.F, *infra*.

[3] The Docket does not reflect Pataki's termination from the action as a consequence of the District Court's Order of Dismissal, which the Second Circuit's reversal did not seemingly affect.

Goord, CNY Psychiatric Center, and Roy filed a Motion to Dismiss. Dkt. No. 81. This Court issued

a Report-Recommendation recommending dismissal of Plaintiff's claims against Roy and CNY

Psychiatric Center, and dismissal of Plaintiff's claims against Goord in part. Dkt. No. 97. The

District Court adopted that Report-Recommendation in its entirety. Dkt. No. 100. Defendants filed

their Motion for Summary Judgment on March 20, 2008, which the Plaintiff has opposed. Dkt. Nos.

135 & 140.

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . .  the moving party is entitled to judgment as a matter

of law."  The moving party bears the burden to demonstrate through "pleadings, depositions,

answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is

no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary

judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure

56(e)] and has, in accordance with local court rules, served a concise statement of the material facts

as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted

unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154

(2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts

showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials"

of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d

282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**B.  Retaliation and Conspiracy Claims**

*-4-*

### 1. *March 13, 2001 Incident*

Plaintiff alleges that Defendants Irwin, Travers, Forth, Jones, and Girdich conspired to retaliate against him for his filing of inmate grievances.  Dkt. No. 10, Second Am. Compl. (hereinafter "Compl.") at ¶ 18.  Plaintiff alleges that on March 14, 2001, at approximately 6 p.m., Defendant Forth deliberately singled him out, subjected him to a search, and placed a weapon on Plaintiff's person.  *Id.*  Plaintiff alleges Sergeant (Sgt.) Irwin and Lieutenant (Lt.) Travers then authorized his confinement in the Special Housing Unit (SHU), and that all five Defendants took steps to cover up their crimes.  *Id.* at ¶¶ 18, 34, & 35.

Defendant Forth swears in his Declaration that on March 14, 2001,[4] he was conducting random pat frisks of inmates on the walkway behind G dorm in the Franklin Correctional Facility.  Dkt. No. 135, John Forth Decl., dated Mar. 14, 2008, at ¶ 3.  Forth asserts that upon randomly selecting and searching Plaintiff, he discovered in Plaintiff's right pant leg cuff a small, flat piece of metal that was sharpened on one end.  *Id.* at ¶ 4.  Forth requested that a supervisor respond to the area via radio, and Sgt. Irwin responded.  *Id*. at ¶ 5.  Defendant Jones swears that he also responded to the radio call, and escorted Plaintiff to the infirmary along with Irwin, where Plaintiff was interviewed.  *Id.*, S. Jones Decl., dated Mar. 20, 2008, at ¶¶ 4-5; Dkt. No. 135, Adrienne J. Kerwin Affirm., dated Mar. 20, 2008, Ex. A, Pl.'s Dep., dated Aug. 22, 2007 (hereinafter "Pl.'s Dep.") at p. 21.  According to Jones, after the interview in the infirmary was completed, Plaintiff was taken to draft processing where he was placed on a BOSS chair, which "x-rays an inmate to determine whether the inmate is secreting any contraband internally," however, no additional contraband was

---

[4] In his Declaration, Forth states that the incident occurred on March 13, 2001.  For the purposes of deciding this Motion, it is immaterial whether the incident occurred on March 13 or March 14, 2001.  Therefore, we assume, as do Defendants in their Memorandum of Law, that the incident occurred on March 14, 2001.

found.  Jones Decl. at ¶¶ 6-7.  Jones states that Plaintiff was then taken to SHU.  *Id.* at ¶ 8.

Thereafter, Forth penned a Misbehavior Report against Plaintiff charging him with illegal possession

of a weapon, and Plaintiff was later found guilty on that charge at a Disciplinary Hearing.  Forth

Decl. at ¶ 7; Kerwin Affirm., Ex. D, Disciplinary Hr'g Tr., dated Apr. 13, 2001, at p. 18.  Plaintiff

subsequently pleaded guilty to criminal charges stemming from the same incident.  Pl.'s Dep. at pp.

47-48; Dkt. No. 140, Pl.'s Opp. to Defs.' Mot. for Summ. J., Mem. of Law at p. 18.

### a.  Retaliation Claims

The Second Circuit has stated that courts must approach prisoner retaliation claims "with

skepticism and particular care," since "virtually any adverse action taken against a prisoner by a

prison official - even those otherwise not rising to the level of a constitutional violation - can be

characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491

(2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854

F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S.

506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he

engaged in constitutionally protected conduct and, second, that the conduct was a substantial or

motivating factor for the adverse actions taken by prison officials."  *Bennett v. Goord*, 343 F.3d 133,

137 (2d Cir. 2003) (citations omitted).  Thus, there must be a "causal connection between the

protected speech and the adverse action."  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)

(citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting

circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need

for direct evidence.  *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded).  Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff.  *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original).  This objective test will apply even though a particular plaintiff was not himself deterred.  *Id.*  If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity.  *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of Grievances is "among the most precious of the liberties safeguarded by the Bill of Rights."  *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access

. . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

Plaintiff alleges that he was retaliated against for his filing of Grievances against Defendants Irwin, on December 14, 2000, and Travers, in December 2000, and for a lawsuit he commenced against Corcraft Industry[5] in November 2000.  Compl. at ¶ 18; Pl.'s Dep. at pp. 27-28.  As we noted above, filing grievances is constitutionally protected conduct, and therefore Plaintiff has established the first element of his retaliation claim.  However, Plaintiff falls short of establishing a causal connection between his protected conduct and the alleged adverse actions that were taken.

Plaintiff alleges all five of these Defendants retaliated against him for the Grievances he filed against Irwin and Travers, however there is no evidence on the record that Defendants Forth, Jones, or Girdich knew about those Grievances; nor is there any indication as to why those Defendants would retaliate against Plaintiff for grievances filed against other officers.  For their part, Forth and Jones swear they had no knowledge of Plaintiff's prior Grievances against Irwin and Travers.  Forth Decl. at ¶ 10; Jones Decl. at ¶ 11.  Plaintiff has failed to show any evidence of a causal connection between the Grievances he filed against Irwin and Travers and the alleged retaliatory actions of Forth, Jones, and Girdich.  Therefore, it is recommended that Plaintiff's retaliation claims be **dismissed** against Defendants Forth, Jones, and Girdich.

With regards to Plaintiff's retaliation claims against Defendants Irwin and Travers, his Complaint alleges no specific adverse actions taken against him on their part.  *See* Compl. at ¶¶ 18 & 34-35.  Instead, Plaintiff states in conclusory fashion that Irwin and Travers were part of a

---

[5] Plaintiff does not explain what the Corcraft Industry is or how his alleged lawsuit against that company figures into his retaliation claims.

conspiracy to set him up and used their positions to "cover-up their crimes." *Id.* at ¶ 35.  Further weakening Plaintiff's claim, the temporal proximity between the Grievances filed in December of 2000 and the alleged set-up on March 14, 2001, does not weigh in Plaintiff's favor.  Moreover, Plaintiff was convicted of possessing a weapon at a Disciplinary Hearing, and subsequently pleaded guilty to criminal charges stemming from the same infraction.  In sum, Plaintiff's claims against Irwin and Travers are conclusory and we find no evidentiary support for them whatsoever in the record.  Therefore, we recommend Plaintiff's retaliation claims against Irwin and Travers be **dismissed**.

### b. Conspiracy Claim

Plaintiff alleges Defendants Forth, Irwin, Travers, Jones, and Girdich conspired against him in violation of 42 U.S.C. §§ 1983 & 1985.  The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the claims made in this case, states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v.*

*Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted). "In this context, 'class-based animus'
encompasses only those groups with discrete and immutable characteristics such as race, national
origin, and sex." *Martin v. New York State Dept. of Corr. Servs.*, 115 F. Supp. 2d 307 (N.D.N.Y.
2000) (citations omitted).

In this case, Plaintiff fails to allege any racial or class-based invidious discriminatory animus
on the part of the Defendants. Rather, he has asserted that the alleged conspirators were motivated
by the Grievances he filed against Irwin and Travers. Compl. at ¶ 18. Because the Complaint is
devoid of any allegation of racial or class-based animus, Plaintiff has failed to state a viable § 1985
conspiracy claim.[6] *See Lewis v. Goord*, 2008 WL 902179, at *3 (N.D.N.Y. Mar. 31, 2008)
(dismissing a § 1985 claim when Plaintiff failed to allege racial or class-based animus) (citation
omitted).

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement
between two or more state actors or a state actor and a private party; (2) to act in concert to inflict
an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.
*Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002). Plaintiff offers no evidence
of an agreement between the Defendants to conspire against him. Instead, Plaintiff merely asserts
that the agreement is self-evident from the circumstances of the discovery of the weapon on his
person followed by his confinement in SHU and conviction at a Disciplinary Hearing. While the
Second Circuit has recognized that "conspiracies are by their very nature secretive operations, and

---

[6] Plaintiff also alleges Defendant Goord denied him equal protection under the law and violated the First
Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, because
Plaintiff was denied Islamic Halal meals. Compl. at ¶¶ 28 & 46-47. Those claims are completely unrelated to Plaintiff's
conspiracy claim that Defendants Forth, Irwin, Travers, Jones, and Girdich set him up. Furthermore, the District Court
adopted this Court's recommendation that those claims be dismissed for failure to allege personal involvement on the
part of Goord. *See* Dkt. Nos. 97 & 100.

may have to be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks and citation omitted), we do not see how any reasonable jury could conclude that an agreement to conspire against Plaintiff existed between the Defendants. *See Porter v. Selsky*, 287 F. Supp. 2d 180, 187 (W.D.N.Y. 2003) (granting summary judgment when plaintiff failed to adduce any facts of an agreement to conspire).

The record shows that Defendant Forth was conducting random searches on inmates moving through the walkway behind G dorm, not just Plaintiff. Forth Decl. at ¶ 3. Defendants Irwin and Jones did not participate in the search, but rather, responded to Forth's radio call for assistance and then escorted Plaintiff to the infirmary for questioning and later to the SHU for confinement pending Plaintiff's Disciplinary Hearing. According to Plaintiff's deposition, Defendant Travers's participation was limited to approving Plaintiff's confinement in SHU pending his hearing, a decision specifically authorized under N.Y. COMP. CODES. R. & REGS. tit. 7, § 251-1.6(d). Though Plaintiff makes no factual allegations as to Defendant Girdich's participation in the alleged conspiracy in his Complaint, he testified that Superintendent Girdich delayed in responding to grievances he filed, and that he put Girdich on notice that retaliatory acts were going to happen to him by filing a Grievance with Girdich months before the March 14, 2001 incident. Pl.'s Dep. at pp. 34-43. Such allegations, even assuming their veracity, do not support an agreement amongst these five Defendants to conspire against Plaintiff. *See, e.g., Cusamano v. Sobek*, 2009 WL 211155, at *28 (N.D.N.Y. Jan. 26, 2009) (conspiracy claim failed because plaintiff offered no evidence of a meeting of the minds between the defendants).

Furthermore, Plaintiff has not shown that a material question of fact exists concerning his retaliation claims. Because Plaintiff has not shown a deprivation of a federal right, "there can be

no civil rights conspiracy to deprive that right." *See Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) (citation omitted).  Therefore, it is recommended that Plaintiff's conspiracy claims regarding the March 14, 2001 incident be **dismissed**.

### 2. *Retaliation by Defendant Leduc*

Plaintiff alleges that on August 5, 2001, Defendant Leduc wrote a false Misbehavior Report against him in retaliation for Plaintiff's filing a Grievance against Leduc in July 2001.  Compl. at ¶¶ 21 & 37.  By his Declaration, Leduc swears to the following: On August 5, 2001 he was escorting the Office of Mental Health ("OMH") nurse on medical rounds in the SHU at Clinton Correctional Facility ("Clinton"), where Plaintiff was housed.  The OMH nurse handed Plaintiff his medication, but Plaintiff refused to ingest it in their presence as required by DOCS rules.  Leduc ordered Plaintiff to give the medication back to the nurse, but Plaintiff refused.  Leduc gave Plaintiff several direct orders to return his medication, all of which were refused.  As a consequence, Leduc authored a Misbehavior Report against Plaintiff for disobeying a direct order, interference with an employee, and accessing unauthorized medication.  Dkt. No. 135, Raymond Leduc Decl., dated Mar. 14, 2008, at ¶¶ 3-11.

Though Plaintiff does not provide any detailed allegations in his Complaint, he testified that he could not recall whether or not the OMH nurse gave him medication.  Pl.'s Dep. at pp. 61-77.  At a Disciplinary Hearing on the charges alleged in Leduc's Misbehavior Report, Plaintiff testified that he took his medication, but not when he was told to.  Kerwin Affirm., Ex. E, Disciplinary Hr'g Tr., dated Aug. 16, 2001, at p. 15.  Plaintiff testified: "I was not able to take it [] when I grabbed it . . . [because] I couldn't move."  He claims that he took the medication while the nurse continued making her rounds.  *Id.* at p. 16.  Thus, by Plaintiff's own admission, he did not take the medication

when ordered to do so, though he alleges he took it shortly thereafter.  In any event, Plaintiff admits

he disobeyed a direct order to take his medication and he was convicted at the Disciplinary Hearing

on that charge in addition to the other charges brought.  *Id.* at pp. 32-33.  Furthermore, Leduc noted

in the Misbehavior Report that Plaintiff had been "counseled numerous times about detaining the

OMH nurse when she is on the medication run," and Plaintiff indirectly confirmed that allegation

by testifying that Leduc kept "trying to rush me to get the medication and he was consistently doing

that every day."  Dkt. No. 140, Ex. B-1, Misbehavior Rep., dated Aug. 5, 2001; Pl.'s Dep. at p. 66.

Given Plaintiff's admission that he failed the follow a direct order, and in the absence of any

evidence on the record supporting his retaliation claim, we conclude that Plaintiff has failed to

establish that a question of material fact exists concerning Leduc's alleged adverse action against

him.  Because there is no basis upon which a reasonable jury could conclude that Leduc took an

adverse action against Plaintiff, we recommend that this claim be **dismissed**.

3.  *Retaliation by Defendant T. Reif*

Plaintiff alleges that on February 13, 2003, Defendant T. Reif filed a false Misbehavior

Report against him in retaliation for a Grievance Plaintiff filed against the Law Library.  Compl. at

¶¶ 26 & 48.  Plaintiff alleges that on that date he informed Reif that his cane was missing and asked

him if he had seen it.  *Id.* at ¶ 26.  Plaintiff alleges that another inmate was going to deliver his cane

to Plaintiff, but Reif improperly took the cane from that inmate and then wrote Plaintiff a false

Misbehavior Report accusing Plaintiff of losing State property.  *Id.*  Reif asserts in his Declaration

that Plaintiff told him he lost his State-issued cane, and a subsequent search of the law library for

the cane was not successful.  Dkt. No. 135, Timothy Reif Decl., dated Mar. 12, 2008, at ¶¶ 4-5.  Reif

declares he wrote the Misbehavior Report because Plaintiff admitted he lost State property, and

denies possessing Plaintiff's cane at any time or ordering another inmate to take the cane. *Id.* at ¶¶ 6 & 9-11.

At the Disciplinary Hearing on the charge of losing State property brought in the Misbehavior Report, an inmate witness testified on Plaintiff's behalf that he saw another inmate give Reif the cane.   Kerwin Affirm., Ex. F, Disciplinary Hr'g Tr., dated Feb. 24, 2003, at p. 13. However, as the hearing officer who found Plaintiff guilty pointed out, neither the inmate-witness nor Plaintiff could identify the inmate that allegedly gave the cane to Reif, and therefore that inmate could not be called to testify.  *Id.*

Neither in his Complaint nor in his Opposition to the Defendants' Motion does Plaintiff identify the Grievance filed against the Law Library that was the alleged protected conduct in which he was engaged, nor does he explain the nature of such Grievance or why it would motivate Defendant Reif to retaliate against him.  Although we reaffirm Plaintiff's constitutionally protected right to file grievances, he has failed to articulate or identify any evidentiary basis for a causal nexus between the Grievance he allegedly filed against the Law Library and Reif's filing of a Misbehavior Report against him.  Therefore, it is recommended that the Defendants' Motion be **granted** on this claim.

### C.  Eighth Amendment Claim

Plaintiff claims Defendant Dr. Kang Lee was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the

evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to be considered are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves

culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In this case, Plaintiff alleges that Dr. Lee discontinued his Flexeril prescription and did not treat any of his serious medical conditions from April 2001 through August 23, 2002, which included "[b]lood, [k]idney, back, leg, and head injuries," and that he now suffers from a gastric ulcer as a consequence of Dr. Lee's failure to treat him.  Compl. at ¶¶ 19, 33, & 45.  The record shows that on April 24, 2001, Dr. Lee examined Plaintiff for complaints of back pain and prescribed him Motrin.  Kerwin Affirm., Ex. H, Ambulatory Health Rec. ("AHR"), entry dated Apr. 24, 2001. By his Declaration, Defendant Lee asserts his "decision to prescribe Motrin to treat the plaintiff's back pain instead of Flexeril was based on [his] medical judgment."  Dkt. No. 135, Kang Lee, M.D., Decl., dated Mar. 14, 2008, at ¶ 7.

With respect to Plaintiff's disagreement with Dr. Lee's decision to discontinue Flexeril, such disagreements between inmates and "prison officials over treatment decisions fall short of cruel and unusual punishment" under the Eighth Amendment.  *Ifill v. Goord et al.*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) (citation omitted).

As to Plaintiff's allegation that Dr. Lee failed to treat his serious medical conditions, even assuming, *arguendo*, that Plaintiff suffered from a serious medical condition, there is simply no evidence that Dr. Lee acted recklessly with respect to a known substantial risk of harm.  First, there is no evidence that Dr. Lee knew of any serious medical condition afflicting Plaintiff during the period of Dr. Lee's treatment from April 2001 through August 2002.  Plaintiff's AHR reveals that

from April 2001 through August 2003, Plaintiff complained of back pain, upset stomach, dandruff, heart burn, athletes foot, and vomiting.  Pl.'s Opp'n, Ex. A-1, AHR, at entries dated May 2, 2001 through Aug. 19, 2003.  None of those infirmities constitutes a serious medical condition under the Eighth Amendment.  *See, e.g., Ross v. McGinnis*, 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (noting that "abdominal pain, vomiting, heartburn, constipation, body odor and extreme body heat did not constitute a serious medical need").

Plaintiff refers to an AHR entry evidencing his complaints of an infected stomach and a nurse's noted request that Plaintiff receive blood tests for "SMAC, CBC, M/A, H.-Pylori, PRP HBSAG."  Pl.'s Opp'n, Ex. A-1, AHR, entry dated May 7, 2001.  Plaintiff also submitted a copy of the results of a blood test conducted on June 27, 2005, showing that Plaintiff tested positive for H. Pylori[7] on that date.  *Id.*, Blood Test Rep., dated June 29, 2005.  Assuming that an H. Pylori infection constitutes a serious medical condition under the Eighth Amendment, Plaintiff has identified nothing in the record showing that his H. Pylori infection was known to Dr. Lee, or that he suffered from such an infection from April 2001 through August 2002.  Nor is there any evidence that Plaintiff requested blood tests from Dr. Lee from April 2001 through August 2002, while at Clinton, although the record shows he made several such requests in 2004-2005 while he was incarcerated at the Great Meadow Correctional Facility.  Pl.'s Opp'n, Ex. A-1, Grievances dated Feb. 28, 2002 (complaining of asbestos-caused ailments, inadequate treatment for his back, and the discontinuance of his Flexeril medication, but not of a blood infection) & Mar. 24, 2005; Lts. to Governor Pataki, dated Mar. 24 & June 18, 2005.

Because Plaintiff has failed to specifically allege or provide any evidence as to how Dr. Lee

---

[7] H. Pylori is a species of bacteria that causes gastritis and pyloric ulcers in humans.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 739 (28th ed. 1994).

was deliberately indifferent to his serious needs, these Eighth Amendment medical indifference claims should be **dismissed**.

### D.  Plaintiff's Remaining Claims

#### 1.  *Asbestos Removal*

Plaintiff alleges that Defendant Superintendent Daniel Senkowski "did not possess the required permit or approval from the appropriate [o]fficials to remove/perform the removal of [asbestos]," and as a result, Plaintiff had problems breathing, experienced pain in his lungs, felt weak and dizzy in the head, and was always throwing up his food.  Compl. at ¶ 23.  As we stated in our March 5, 2007 Report-Recommendation, "failing to possess proper authorization forms to remove asbestos is not a constitutional violation.  Moreover, Plaintiff does not state he did not receive treatment when he became ill due to the removal."  Dkt. No. 97, Rep.-Recommendation at p. 17. Therefore, this claim should be **dismissed** because Plaintiff has failed to allege or show any evidence of a constitutional violation.

#### 2.  *Copy Card Incident*

Plaintiff alleges that on August 3, 2003, he bought $125.00 worth of copy cards, but that Defendant T. Reif informed him he would not receive the cards because he was "under investigation by Sgt. Johnson for ordering that amount of copy cards."  Compl. at ¶ 27.  Plaintiff alleges such actions were "done wilfully and maliciously to abuse" and degrade him.  *Id.*  In his Eighteenth Cause of Action, Plaintiff alleges that the copy cards were repossessed without justification and not returned until six days later, thereby constituting an abuse of process.  *Id.* at ¶ 49.

Reif avers that per DOCS Directive 2798, § III (A)(1)(c), an inmate disbursement request in excess of $100 must have the Superintendent's written approval.  Reif Decl. at ¶ 13.  Reif states

that "upon information and belief, the plaintiff was . . . investigated by Bare Hill staff about his attempt to purchase $125.00 worth of copy cards without the Superintendent's written approval," but that "plaintiff . . . ultimately received approval, and was given his copy cards." *Id.* at ¶ 14. Plaintiff does not refute that he eventually received the copy cards with the full value he placed on them.  In that respect, a copy of a Response sent to Plaintiff concerning a Grievance he filed indicates that Plaintiff "received his copy cards on 8/13/03."  Pl.'s Opp'n, Ex. B-7, Sup't Resp. to Grievance, dated Aug. 29, 2003.

Thus, Plaintiff's allegation appears to be based solely on his belief that he should not have been subjected to the investigation that caused his delayed receipt of the cards.  He does not allege that his access to the courts was somehow prejudiced as a result of the delay, and indeed the Central Office Review Committee's (CORC) Decision on the appeal of his Grievance noted that Plaintiff "did not use the copy cards until 8.27.03, which is fourteen days after the copy cards were issued to him." *Id.*, CORC Decision, dated Oct. 22, 2003.  Therefore, because Plaintiff has failed to show that his constitutional rights were violated in any manner, it is recommended that this claim be **dismissed**.

### 3.  *Supervisory Liability Claims against Defendant Goord*

As we stated in our March 5, 2007 Report-Recommendation, "Plaintiff has failed to allege any facts that Goord was personally involved in any constitutional violation."  Dkt. No. 97, Rep.-Recommendation at p. 8.  However, Plaintiff alleged several claims of supervisory liability against Goord. *See* Compl. at ¶¶ 36 & 40-45.  In our Report-Recommendation, we declined to dismiss all of Plaintiff's claims against Goord because the possibility existed that supervisory liability could lie if Plaintiff proved that the underlying retaliation claims had merit.  Specifically, the following

claims of supervisory liability survived the Motion to Dismiss: (1) retaliation and conspiracy against Forth, Jones, Irwin, and Travers for allegedly planting a weapon on Plaintiff and sending him to SHU on March 14, 2001; (2) retaliation against Reif for allegedly filing a false Misbehavior Report against Plaintiff in retaliation on February 13, 2003; and (3) retaliation against Leduc for allegedly filing a false Misbehavior Report against Plaintiff in retaliation on August 5, 2001.  Dkt. No. 97, Rep.-Recommendation at pp. 14, 17, & 19.

Because we have recommended that the Defendants' Motion for Summary Judgment be granted as to each of these three retaliation claims, there is no basis upon which to hold Defendant Goord supervisorily liable.  *See supra* Part II.B(1)-(3).  Therefore, it is recommended that these supervisory claims be **dismissed**.

### F.  Failure to Serve

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[8]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id.*

According the docket, Defendant Melendez has not been served with process.  On December 5, 2008, the Court denied Plaintiff's Motion for an extension of time to effect service on Dr. Melendez, and provided the following history of Plaintiff's failure to serve Melendez over a period of several years:

---

[8] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

Accomplishing service of process on the Defendants in this case has proven to be quite a protracted and difficult endeavor. As of June 28, 2006, four of the fourteen individuals named as Defendants in Plaintiff's Second Amended Complaint remained unserved. *See* Dkt. No. 95, Order, dated June 28, 2006, at p. 2.[9] In reviewing the status of service of process, the Court noted that the efforts to serve Dr. Melendez at Clinton Correctional Facility (the address provided by Plaintiff) had not been successful and that the Court's request to the Office of General Counsel of the Department of Correctional Services ("DOCS") for information had not yielded further information. *Id*; *see* Dkt. Nos. 34 & 67. Accordingly, Plaintiff was afforded a further opportunity to provide the Court with information regarding the identity of this individual and was advised that if no further information was forthcoming, Dr. M. Melendez would be dismissed as a Defendant. Dkt. No. 95 at p. 3.

Approximately seven months later, the Court again reviewed the status of service of process on Dr. Melendez. *See* Dkt. No. 97, Report-Recommendation and Order, dated Mar. 5, 2007, at pp. 24-27. While noting that Plaintiff had not provided any further information regarding this individual, and recognizing that this case cannot exist in perpetuity, the Court nevertheless afforded Plaintiff another opportunity to provide information about Dr. Melendez which would permit a further attempt at service. *Id.*

By letter dated April 13, 2007, Plaintiff advised that Dr. Melendez was employed in the Satellite Unit at Clinton Correctional Facility. Dkt. No. 103. Although this information was not new, a Summons was issued and the U.S. Marshal attempted service of process by mail at Clinton Correctional Facility. Service was returned unexecuted on November 27, 2007. Dkt. No. 127. The Summons was re-issued the next day and service was again attempted at Clinton Correctional Facility (the address provided by Plaintiff). This Summons was returned by the U.S. Marshal unexecuted on March 11, 2008, with the notation that Melendez "[n]o longer works at that facility." Dkt. No. 134.

Plaintiff's present request for further service, filed approximately four months later, does not provide any additional information regarding Dr. Melendez. Dkt. No. 144. Rather, Plaintiff merely expresses his frustration with the fact that this individual remains unserved and his belief that the Court has been provided with misleading information regarding Dr. Melendez's employment with DOCS. *Id.* Plaintiff appears to claim that the advice rendered by DOCS counsel in December 2005 that no employee by that name had been located is inconsistent with the more recent notation that Dr. Melendez no longer works at Clinton, and that his legitimate interests in effecting service on this individual have been improperly thwarted. *Id.* Upon due consideration, the Court denies Plaintiff's request that the time for service of process under Rule 4(m) be further extended. This action has been pending for five years. Throughout the pendency of this action, the U.S. Marshal has duly

---

[9] Service of process was subsequently effected on three of these Defendants. *See* Dkt. No. 114 (Acknowledgment of Service on Kang Lee, MD); Dkt. No. 122 (Acknowledgment of Service on Daniel Senkowski); Dkt. No. 123 (Acknowledgment of Service on Roy Girdich).

attempted to effect service of process on Dr. Melendez at the address provided by Plaintiff.  In addition, although Plaintiff has been afforded ample opportunity to provide additional information which might enable the U.S. Marshal to effect service, none has been forthcoming.  Accordingly, it is not at all apparent that a further extension of the service deadline would be meaningful.

\* \* \*

Plaintiff is advised that the Court will consider whether Dr. Melendez should be dismissed as a Defendant pursuant to Rule 4(m) in its Report-Recommendation addressing the Motion for Summary Judgment filed by Defendants Lee, Senkowski, Leduc, Irwin, Travers, Forth, Jones, Reif, Goord and Girdich.  *See* Dkt. No. 135. The Court may also assess the sufficiency of Plaintiff's claims against Dr. Melendez in accordance with 28 U.S.C. § 1915(e)(2)(B)(2) (the court may dismiss claims brought in *forma pauperis* at any time that the court determines *inter alia* that plaintiff does not state a claim for relief).

Plaintiff is hereby afforded the opportunity to address these issues in a written submission to be filed within thirty (30) days of the filing date of this Order.

Dkt. No. 146, Order dated Dec. 5, 2008, at pp. 2-5.

Although  we offered Plaintiff the opportunity to address **within thirty (30) days** of our December 5, 2008 Order whether his claims against Melendez should be dismissed for failure to serve under Federal Rule of Civil Procedure 4(m), to date, Plaintiff has failed to respond to the Court's request. *See generally* Dkt.

Given Plaintiff's failure to effect service on Melendez during the protracted lifetime of this lawsuit spanning over five years, and given also Plaintiff's failure to respond to the Court's December 5, 2008 Order, we recommend that Plaintiff's claims against Dr. Melendez be **dismissed** due to Plaintiff's failure effect service of process.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 135) be **granted**; and it is further

*-22-*

**RECOMMENDED**, that Plaintiff's claims against Dr. Melendez be **dismissed** due to his

failure to effect service of process on Melendez; and it is further

**RECOMMENDED**, that the Second Amended Complaint (Dkt. No. 10) be **dismissed** in

its entirety

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).


Date:   March 3, 2009
        Albany, New York




_____
RANDOLPH F. TREECE
United States Magistrate Judge