UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOEL MURRAY,

                            Plaintiff,

                                                           9:03-CV-1263
v.                                                         (GTS/RFT)

GEORGE E. PATAKI, Governor of New York State;
GLENN S. GOORD, Commissioner, N.Y.S. D.O.C.S.;
DANIEL SENKOWSKI, Superintendent, Clinton C.F.;
DR. KANG LEE, M.D., Physician, Clinton C.F.;
DR. M. MELENDZ, M.D., Physician, Clinton C.F.;
R. LEDUC, Correctional Officer, Clinton C.F.;
R. GIRDICH, Superintendent, Franklin C.F.;
J. TRAVERS, Correctional Lieutenant, Franklin C.F.;
N. IRWIN, Correctional Sergeant, Franklin, C.F.;
J. FORTH, Correctional Officer, Franklin, C.F.;
S. JONES, Correctional Officer, Franklin C.F.;
and T. REIF, Correctional Officer, Bare Hill C.F.,

                            Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

JOEL MURRAY, 00-A-1884
  Plaintiff, *Pro Se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. ANDREW M. CUOMO                      ADRIENNE J. KERWIN, ESQ.
  Attorney General for the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

HON. GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court in this *pro se* prisoner civil rights action are Defendants' motion for summary judgment (Dkt. No. 135), United States Magistrate Judge Randolph F. Treece's Report-Recommendation (Dkt. No. 149), and Plaintiff's Objections thereto (Dkt. No. 150). For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety, Defendants' motion is granted, and Plaintiff's Second Amended Complaint (Dkt. No. 10) is dismissed.

**I.  RELEVANT BACKGROUND**

On October 17, 2003, Plaintiff filed his Complaint in this action. (Dkt. No. 1.) On October 30, 2003, the Court issued an Order, *inter alia*, directing Plaintiff to file an Amended Complaint. (Dkt. No. 5.) On November 20, 2003, Plaintiff filed an Amended Complaint. (Dkt. No. 7.) On December 8, 2003, the Court struck Plaintiff's Amended Complaint from the docket due to Plaintiff's failure to comply with Fed. R. Civ. P. 8 and 10. (Dkt. No. 8.) On December 22, 2003, Plaintiff filed a Second Amended Complaint. (Dkt. No. 10.) On January 9, 2004, the Court accepted that Second Amended Complaint for filing. (Dkt. No. 11.)

Generally, Plaintiff's Second Amended Complaint alleges that twelve employees of the New York State Department of Correctional Services ("DOCS") stationed at Clinton and Franklin Correctional Facilities ("Defendants") violated his civil rights under 42 U.S.C. §§ 1983, 1985. (Dkt. No. 10.) More specifically, Plaintiff alleges, *inter alia*, as follows: (1) Defendants Irwin, Travers, Forth, Jones and Girdich took adverse action against him on or about March 14, 2001, in retaliation for his having filed grievances against Defendants Irwin and Travers in December of 2000, in violation of the First Amendment, (2) Defendants Irwin, Travers, Forth, Jones and Girdich conspired to plant, and did plant, a weapon on Plaintiff, in violation of 42

U.S.C. §§ 1983, 1985; (3) Defendant Leduc issued a false misbehavior report against Plaintiff on August 5, 2001, in retaliation for Plaintiff's having filed a grievance against Leduc in July of 2001; (4) Defendant T. Reif issued a false misbehavior report against Plaintiff on February 13, 2003, in retaliation for Plaintiff's having filed a grievance against the Law Library; (5) Defendant Lee was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment; (6) Defendant Senkowski ordered the removal of asbestos from the correctional facility without the "required permit or approval from the appropriate [o]fficials"; (7) Defendant T. Reif temporarily repossessed, without adequate justification, $125.00 worth of copy cards purchased by Plaintiff; and (8) Defendant Goord is liable due to his role as a supervisor of the other Defendants. (*Id.*)[1]

On June 14, 2004, Defendants filed a motion to dismiss for failure to state a claim and failure to serve. (Dkt. No. 30.) On February 28, 2005, Magistrate Judge Treece issued a Report-Recommendation recommending the dismissal of Plaintiff's claims against Defendant Pataki for failure to state a claim, and the dismissal of Plaintiff's claims against Defendants Lee, Senkowski, Melendez, Leduc, Irwin, Travers, Forth, Jones, Girdich, Goord, Roy, Reif, and CNY Psychiatric Center for failure to serve. (Dkt. No. 56.) On March 22, 2005, the Report-Recommendation was adopted in its entirety by District Judge Lawrence E. Kahn. (Dkt. No.

---

[1] The Court will assume, for the sake of argument, that Plaintiff's current claims against Defendant Reif do not overlap any claims that Plaintiff has previously litigated (or is currently litigating) against Reif in state court. *See Murray v. Reif*, 828 N.Y.S.2d 669, 670 (N.Y. App. Div., 3d Dept. 2007) (addressing Plaintiff's allegations that Defendant Reif assaulted him, threatened him, read his legal mail without permission, and importuned others not to feed him while he was in a Special Housing Unit), *rev'g, Murray v. Reif*, Index Number 000455/2005, Order (N.Y. Sup. Ct., Franklin County, filed March 13, 2006) (Demarest, J); *see also Murray v. City of New York*, Index No. 403178/05, Decision and Order (N.Y. Sup. Ct., New York County, filed May 2, 2007) (Rakower, J.) (dismissing Plaintiff's action based on collateral estoppel).

60.)  On October 17, 2005, the Second Circuit issued a mandate (filed on August 26, 2005) that effectively reinstated Plaintiff's claims against all Defendants except Defendant Pataki.[2]  (Dkt. No. 65.)

On April 3, 2006, various Defendants filed a second motion to dismiss for failure to state a claim.  (Dkt. No. 81.)  On March 5, 2007, Magistrate Judge Treece issued a Report-Recommendation recommending that Defendants' motion be granted in part and denied in part.  (Dkt. No. 97.)  On March 29, 2007, the Report-Recommendation was adopted in its entirety by District Judge Kahn.  (Dkt. No. 100.)

On March 20, 2008, the remaining Defendants filed a motion for summary judgment seeking the dismissal of all claims against them.  (Dkt. No. 135.)  Generally, Defendants argue that (1) Plaintiff has failed to adduce sufficient record evidence from which a rational trier of fact could find them liable for the claims alleged, and (2) they are entitled to qualified immunity from liability as a matter of law.  (*Id*.)  On June 3, 2008, Plaintiff filed his opposition to Defendants' motion after being granted an extension of the time by which to do so.  (Dkt. No. 140.)  On June 12, 2008, Defendants filed a reply in further support of their motion.  (Dkt. No. 141.)

On March 3, 2009, Magistrate Judge Treece issued a Report-Recommendation recommending that Defendants' motion be granted.  (Dkt. No. 149.)  Familiarity with the grounds of Magistrate Judge Treece's Report-Recommendation is assumed in this Decision and

---

[2]  As noted by Magistrate Judge Treece in footnote 3 of his Report-Recommendation, Defendant Pataki was not properly terminated from the caption of this action following the District Court's Order of March 22, 2005, and the Second Circuit's Mandate of October 17, 2005 (which declined to vacate that portion of the District Court's Order that dismissed Plaintiff's claims against Defendant Pataki).  As a result, the Clerk is directed to terminate Defendant Pataki from this action, pursuant to the District Court's Order of March 22, 2005.

Order.  On March 9, 2009, Plaintiff submitted his Objections to the Report-Recommendation. (Dkt. No. 150.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review on Objection from Report-Recommendation

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[3]  When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], aff'd without opinion, 175 F.3d 1007 (2d Cir.1999).[4]  Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed. R. Civ. P. 72(b), Advisory Committee Notes:

---

[3]     On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C).  However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

[4]     *See also Vargas v. Keane*, 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895, 117 S. Ct. 240, 136 L.Ed.2d 169 (1996).

1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B.  Standard Governing Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*. [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[5]  (This is because the Court extends special solicitude to the *pro se* litigant, in part by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[6]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's

---

[5]     *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[6]     *Krug v. County of Rennselaer*, 04-CV-0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept. 18, 2006) (McAvoy, J.) ("When dealing with a *pro se* party, certain procedural rules apply so as to insure that the *pro se* litigant in not disadvantaged by the lack of legal training.  In this regard, the Local Rules require that [a *pro se* party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed]."); *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted]; *see also* Jessica Case, "*Pro Se* Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 Ky. L.J. 701, 704, n.24 (Spring 2001) ("The Second, Fourth, Seventh, Tenth, Eleventh, and D.C. Circuit Courts of Appeals mandate that notice of summary judgment requirements be given to *pro se* litigants. . . .  The Ninth Circuit requires notice of summary judgment requirements for *pro se* prisoner litigants only.") [citations omitted].

procedural rules.7  For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement8–even where the nonmoving party was proceeding *pro se* in a civil rights case.9

---

       7      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[I]in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") [citation omitted]; *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) ("Although *pro se* litigants should be afforded latitude, . . . they generally are required to inform themselves regarding procedural rules and to comply with them . . . . This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se*] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

       8      Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

       9      *See*, *e.g.*, *Hassig v. N.Y.S. Dep't of Environmental Conservation*, 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd*, No. 04-1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *Lee*, 2004 U.S. Dist. LEXIS 20746, at *12-13, 15, *aff'd*, No. 04-1921, 2004 U.S. App. LEXIS 21432; *Harvey v. Morabito,* 99-CV-1913, 2003 WL 21402561, at *1, 3-4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99-CV-1913, Order, at 2-3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd*, No. 04-1008, 115 F. App'x 521 (2d Cir. Dec. 23, 2004); *Krug*, 2006 WL 2669122, at *2-3; *Fox*, 2006 U.S. Dist. LEXIS 9147, at *2-3;

## III. ANALYSIS

After carefully reviewing all of the papers in this action, including Magistrate Judge Treece's Report-Recommendation of March 3, 2009, and Plaintiff's Objection thereto, the Court rejects each of Plaintiff's Objections and agrees with each of the conclusions offered in the Report-Recommendation. Magistrate Judge Treece employed the proper legal standards, accurately recited the undisputed material facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation in its entirety, for the reasons stated therein.

The Court will only briefly address some of the arguments asserted by Plaintiff in his Objections. First, whether the adverse action (allegedly) taken by Defendants Irwin, Travers, Forth, Jones and Girdich against Plaintiff occurred on March 14, 2001, or on March 13-14, 2001, is immaterial to Defendants' motion.

Second, no rational trier of fact could find that the adverse action taken against Plaintiff on March 13-14, 2001, was caused by his protected speech in December of 2000, based on any or all of the following three arguments, advanced by Plaintiff in his Objections: (1) the former occurred and the latter occurred and therefore they must be causally connected; (2) Plaintiff

---

*Singleton v. Caron*, 03-CV-0455, 2005 WL 2179402, at *3-4 (N.D.N.Y. Sept. 5, 2005) (Peebles, M.J.), *adopted by* 03-CV-0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan*, 289 F. Supp.2d at 295; *Butler v. Weissman*, 00-CV-1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00-CV-1240, Decision and Order, at 1-2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car-Freshner Corp.*, 49 F. Supp.2d 84, 86 & n.1 (N.D.N.Y. 1999) (McAvoy, C.J.); *Costello v. Norton*, 96-CV-1634, 1998 WL 743710, at *1, n.2 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.*, 96-CV-1812, 1998 WL 566773, at *1, n.2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a][3] "to carry out the conduct of its business").

stated in one of his grievances, "Any serious misconduct attributed towards me is the result of Sergeant Irwin"; and/or (3) Defendants Forth and Jones were the subordinates of Defendant Irwin and therefore they must have known about Plaintiff's grievance against Irwin.

Third, in addition to failing due to a lack of record evidence (as explained by Magistrate Judge Treece), Plaintiff's conspiracy claim fails for the alternative reason that it is barred the "intra-corporate conspiracy" doctrine (which is also sometimes referred to as the "intraenterprise conspiracy" doctrine or the "intra-agency conspiracy" doctrine). Generally, that doctrine provides that officers, agents or employees of a single entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) [citation omitted]. Because the Court has found seven district court cases from within this Circuit in which the intracorporate conspiracy doctrine has been applied with regard to conspiracy claims against the State, and only one district court case in which it has not been so applied, the Court finds that the intracorporate conspiracy doctrine does apply to cases in which the entity is the State.[10]

Fourth, the fact that Paragraph 33 of Plaintiff's response to Defendants' Statement of

---

[10]  *See Farid v. Bouey*, 554 F. Supp.2d 301, 324 (N.D.N.Y. 2008) (Sharpe, J.); *Lewis v. Goord*, 06-CV-0504, 2008 WL 902179, at *4 (N.D.N.Y. March 31, 2008) (Scullin, J., adopting, on *de novo* review, report-recommendation by Treece, M.J.); *Ozuno v. Vadlamudi*, 03-CV-0475, 2006 WL 1977618, at *10, n.7 (N.D.N.Y. July 11, 2006) (Sharpe, J., adopting, on *de novo* review, report-recommendation by Peebles, M.J.); *Colon v. Sawyer*, 03-CV-1018, 2006 WL 721763, at *6, n.8 (N.D.N.Y. March 20, 2006) (Kahn, J.); *Orafan v. Goord*, 411 F. Supp.2d 162, 164-65 (N.D.N.Y. 2006) (Magnuson, V.J.); *Scott v. Goord*, 01-CV-0847, 2004 WL 2403853, at *13 (S.D.N.Y. Oct. 27, 2004); *Cates v. State of Conn. DOCS*, 98-CV-2232, 2000 WL 502622, at *8 (D. Conn. Apr. 13, 2000); *but see Fox v. Brown*, 05-CV-1292, 2007 WL 586724, at *12 (N.D.N.Y. Feb. 21, 2007) (Kahn, J., adopting, on *de novo* review, report-recommendation of Di Bianco, M.J.); *see also Cusamano v. Sobek*, 06-CV-0623, 2009 WL 211155, at *29 (N.D.N.Y. Jan. 29, 2009) (Suddaby, J., adopting on *de novo* review report-recommendation of Lowe, M.J.).

Material Facts (which did not expressly affirm or deny, or even address, the material facts asserted in Paragraph 33 of Defendants' Statement of Material Facts, in violation of Local Rule 7.1[a][3]) stated that an unspecified grievance was filed by the Inmate Grievance Review Committee against the Law Library on February 4, 2003 (to which Defendant Reif was assigned), does not constitute admissible record evidence from which a rational trier of fact could find that Defendant Reif's misbehavior report of February 13, 2003, was caused by a grievance filed by Plaintiff, or even that the misbehavior report was false.[11]

Fifth, with regard to Defendant Lee's alleged neglect of Plaintiff's medical conditions, Plaintiff is advised of the following: (1) his argument that Defendant Lee should have suspected that Plaintiff had an H. Pylori infection in his stomach between approximately April 2001 and August 2002 from a blood test conducted at another correctional facility on April 12, 2000–which showed only *some bacteria* in Plaintiff's *urine*–is a non sequitur (even assuming that Defendant Lee reviewed the results of that blood test); (2) his argument that Defendant Lee should have suspected that Plaintiff had an H. Pylori infection in his stomach between approximately April *2001* and August *2002* from a blood test conducted on June 27, *2005*, is anachronistic and temporally impossible; (3) none of the four grievances cited by Plaintiff in his Objections (i.e., CL-46384-02, CL-46644-02, CL-45854-02, and CL-46926-02) complains that Defendant Lee refused to conduct a blood test for H. Pylori bacteria (even assuming that Defendant Lee knew of such a grievance during the time in question); (4) a prisoner's disagreement with a prison physician's medical judgment to not order a blood test does not

---

[11] It should be noted that the misbehavior report in question subsequently resulted in Plaintiff's disciplinary conviction.

11

represent cruel and unusual punishment;[12] and (5) "deliberate indifference describes a state of mind more blameworthy than negligence [or medical malpractice]."[13]

Sixth, because Plaintiff has failed to make any specific objections to Magistrate Judge Treece's recommendation that his retaliation claim against Defendant Leduc be dismissed, that recommendation is subject to only clear-error review, which it survives.[14]

Seventh, and finally, the Court is not persuaded by Plaintiff's argument that he diligently tried to identify and locate Defendant Melendez (so that the United States Marshal's Service could serve him) in that (1) on August 1, 2007, he filed a "Notice of Motion for an Order of Sanctions [against Defendants]," based on, *inter alia*, Defendants' (asserted) misrepresentation

---

[12]  *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question of whether . . . [a] diagnostic technique[] . . . is indicated is a classic example of a matter for medical judgment. A medical decision not to order . . . like measures[] does not represent cruel and unusual punishment.  At most it is medical malpractice. . . ."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001) (prisoner's "disagreements over . . . diagnostic techniques (e.g., the need for X-rays) . . . are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted].

[13]  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence. . . .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[14]  The Court would note that this recommendation would survive even a *de novo* review.

that no medical records exist identifying Dr. Melendez (*see* Dkt. No. 109, at 5), and (2) on December 11, 2008, he filed an appeal from Magistrate Judge Treece's Order and Decision of December 5, 2008 (*see* Dkt. No. 147).  Plaintiff's motion for sanctions was denied on October 16, 2007.  (Dkt. No. 120.)  Furthermore, his appeal was denied by this Court on January 6, 2009.  (Dkt. No. 248.)

As explained in this Court's Decision and Order of January 6, 2009, approximately a month after the Court requested (on November 21, 2005) that the Office of DOCS Counsel provide the Clerk of the Court with pertinent information about "Dr. Melendez," the Office of DOCS Counsel complied with that request by sending the Clerk of the Court a letter that stated, in pertinent part, "We have not been able to identify an employee by the name of Dr. Melendez."  (Dkt. No. 67.)  As a result, on June 28, 2006, the Court issued a Decision that effectively shifted the burden back to Plaintiff, advising him that "unless [he] is able to provide the Court with further information regarding the identity of [Dr. Melendez], no further attempt at service can be made and [she] will be dismissed from this lawsuit."  (Dkt. No. 95, at 3.)  However, during the eight (8) months that followed, Plaintiff did not provide such information to the Court.  (*See generally* Docket Sheet.)

As a result, on March 5, 2007, the Court (1) directed Plaintiff that he must file with the Court a letter providing information regarding the identity of Dr. Melendez by April 20, 2007, and (2) warned Plaintiff that his failure to provide that information by that time would lead the Court to recommend the dismissal of Plaintiff's claims against Dr. Melendez.  (Dkt. No. 97, at 24-27; Dkt. No. 101, at 2.)  On April 1, 2007, Plaintiff provided the Court with the purported address of Dr. Melendez (at the Satellite Unit of Clinton Correctional Facility).  (Dkt. No. 103.)  However, that address was the same as the invalid address for Dr. Melendez provided by

13

Plaintiff three-and-a-half years earlier. (Dkt. No. 34.) Not surprisingly, on November 21, 2007, the Summons was returned unexecuted as to Dr. Melendez due to an inability to locate her at Clinton Correctional Facility. (Dkt. Nos. 108, 127.) Nonetheless, in another extension of special solicitude to Plaintiff, the Court reissued a Summons as to Dr. Melendez on November 26, 2007. (Dkt. No. 128.) On March 11, 2008, that Summons was also returned unexecuted, with the following notation: "2/27 No longer works at [Clinton Correctional Facility]. P. Hibbs." (Dkt. No. 134.)

Five months later, on August 10, 2008, Plaintiff filed a request for a *sixth* extension of the time for service of process on Dr. Melendez under Fed. R. Civ. P. 4(m). (*See* Dkt. Nos. 49, 66, 75, 79, 95, 144.) Plaintiff's request did not provide any new information regarding Dr. Melendez. (*Id.*) Rather, that request accused the DOCS Counsel's Office of lying about Dr. Melendez' whereabouts on December 27, 2005. (*Id.*) Plaintiff reasoned that the P. Hibbs' assertion (presumably made on February 27, 2008) that "[Dr. Melendez] [n]o longer works at [Clinton Correctional Facility]" contradicts the Office of DOCS Counsel's assertion (made on December 27, 2005) that "[w]e have not been able to identify an employee by the name of Dr. Melendez." (*Compare* Dkt. No. 134 *with* Dkt. No. 67.)

The Court finds no contradiction between the two referenced factual assertions. Both assertions are consistent with the apparent fact that Dr. Melendez stopped working at Clinton C.F. before December 27, 2005 (and that her prior employment was recalled by P. Hibbs on February 27, 2008). It should be noted that the apparent fact Dr. Melendez stopped working at Clinton C.F. before December 27, 2005, is also consistent with the fact that, on or about June 14, 2004, the United States Marshal's Service reported that they did not find her at Clinton C.F.

14

(Dkt. No. 34.)[15]

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Treece's Report-Recommendation (Dkt. No. 149) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 135) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against Dr. Melendez are **DISMISSED** without prejudice due to Plaintiff's failure to effect service of process on her; and it is further

**ORDERED** that the remainder of Plaintiff's Second Amended Complaint (Dkt. No. 10) is **DISMISSED** with prejudice.  The clerk is directed to enter judgment dismissing this case.

Dated: April 9, 2009
 Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[15] It should be noted that, contrary to Plaintiff's implicit suggestion, the ultimate responsibility to provide correct information concerning Defendant Melendez's identity and whereabouts rests squarely on Plaintiff's shoulders.  *See, e.g., Jermosen v. Smith*, 82-CV-0620, 1989 WL 153810, at *1 (W.D.N.Y. Dec. 7, 1989) ("The Court is cognizant of its duty to effect service when a plaintiff has been granted *in forma pauperis* status but opines that the responsibility to provide correct information concerning a defendant's whereabouts rests squarely on the shoulders of a plaintiff.  Neither the Marshal, this Court nor the Attorney General . . . should be required to provide the whereabouts of defendants whom a plaintiff decides to sue."); *cf. Murray v. Pataki*, No. 05-1720-pr, Mandate (2d Cir. filed Aug. 26, 2005) (vacating Court's prior Decision and Order of Dismissal of March 22, 2005, only because U.S. Marshal's Service had not, at that time, had a full opportunity to serve Defendants based on the identifying information provided, or possessed, by Plaintiff).  (*See also* Dkt. No. 11 [Decision and Order of Jan. 8, 2004, directing that "Plaintiff shall . . . comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action [e.g., completed USM-295 Forms].")