**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOEL MURRAY,

                              Plaintiff,

           - v -                                        Civ. No. 9:03-CV-1263
                                                             (GTS/RFT)
DR. M. MELENDZ,[1]

                              Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

JOEL MURRAY
Plaintiff, *Pro Se*
472 West 147th Street
Apt. 4
New York, NY 10031

HON. ERIC T. SCHNEIDERMAN                    ADRIENNE J. KERWIN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendant
Department of Law
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**[2]

**I.  INTRODUCTION**

*Pro se* Plaintiff Joel Murray, a former New York state prison inmate[3] commenced this action

---

[1] In his Second Amended Complaint, Plaintiff improperly spells Defendant's last name as "Melendz." The Court will refer to this Defendant by the proper spelling of her name: "Melendez."

[2] This matter was referred to the undersigned for a Report-Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to the Local Rules of the Northern District of New York

[3] Plaintiff was incarcerated when he filed this action in 2003 but was released from New York state custody in May 2011. Dep't of Corr. & Cmty. Supervision Inmate Locator Website, *available at*
(continued...)

pursuant to 42 U.S.C. § 1983 claiming that Defendant Dr. Maria Melendez violated his civil rights.[4] Dkt. No. 10, 2d Am. Compl.  Specifically, Plaintiff alleges that Defendant Melendez violated his Eighth Amendment rights by ordering him to be forcibly restrained and injected with medication and through her failure to remedy the inhumane conditions of his confinement.

Defendant moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and Plaintiff opposes.  Dkt. Nos. 183 & 187–88.  For the reasons that follow, it is recommended that Defendant's Motion be **granted**.

## II. FACTS

Unless otherwise noted, the following facts are undisputed.  Plaintiff was incarcerated at Clinton Correctional Facility from April 2001 until August 23, 2002.  2d Am. Compl. at ¶¶ 19 & 24. All relevant facts occurred at Clinton during this time period.  Dr. Melendez was employed by the New York State Office of Mental Health and worked in the Mental Health Unit ("MHU") at Clinton during the relevant time period.  Dkt. No. 183-6, Def.'s Statement Pursuant to Rule 7.1(a)(3) [hereinafter "Def.'s 7.1 Statement"] at ¶ 4.  Murray was moved from general population to the MHU on April 2, 2002, after exhibiting loud and disruptive behavior.  *Id*. at ¶¶ 2-3.  During an April 3, 2002 examination, Plaintiff informed Defendant that, while housed in general population, he was forced to eat in his cell instead of in the mess hall and was not permitted to shower or use the yard. *Id*. at ¶ 8.  Also on April 3, 2002, Plaintiff ate breakfast and lunch, but refused his dinner.  *Id*. at ¶ 9.

---

[3](...continued)
http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ2/WINQ120 (last visited September 12, 2011).

[4] Plaintiff initially brought twenty-five separate causes of action against a total of fourteen Defendants.  Dkt. No. 10, 2d Am. Compl.  After numerous motions and appeals, all Defendants except Dr. Melendez have been dismissed.

Defendant asserts that on April 4, 2002, Murray engaged in psychotic behavior and urinated on his cell door. *Id*. at ¶¶ 10-11. Plaintiff denies these allegations and claims that he became upset only after correction officers had placed their own "bodily waste" in his food. Dkt. No. 187-1, Pl.'s Statement Pursuant to Rule 7.1(a)(3) [hereinafter "Pl.'s 7.1 Statement"] at ¶¶ 10-11. Plaintiff alleges that Defendant failed to take any action after being advised of the officers' conduct. *Id*. Murray refused another meal on April 4, 2002. Def.'s 7.1 Statement at ¶ 12. Also on April 4, 2002, Dr. Melendez ordered that Plaintiff be provided Depakene and Risperdal until April 11, 2002. *Id*. at ¶ 13. However, Plaintiff refused to take these medications each day during that time period. *Id*. at ¶ 14.

Dr. Melendez did not examine Plaintiff on April 5, 6, or 7, 2002. *Id*. at ¶ 15. Plaintiff refused two meals on April 6, 2002, and all meals on April 7, 2002. *Id*. at ¶ 17. On April 8, 2002, Plaintiff's cell was found to be "filthy" with urine, feces, and paper strewn about. *Id*. at ¶¶ 20 & 25. Dr. Melendez evaluated Plaintiff on this date and found him to be agitated and, in her medical opinion, a danger to himself and others in light of the fact that he had threatened staff with physical harm. *Id*. at ¶ 21. As a result, Dr. Melendez ordered that Plaintiff be injected with Haldol/Atarax/Cogentin to calm him down and ensure his and the prison staff's safety. *Id*. at ¶ 22. Plaintiff was then moved to a clean cell, where he again refused his dinner. *Id*. at ¶¶ 29-30.

Plaintiff disputes Defendant's version of the events that took place on April 8, 2002. He asserts that correction officers were responsible for the unsanitary condition of his cell. Pl.'s 7.1 Statement at ¶¶ 20 & 25. While Plaintiff admits to "cursing out" staff on that date, he insists that he became agitated only after officers placed human waste in his food, threw his food tray on the floor, and provoked him by smiling in his face. *Id*. at ¶¶ 18-19 & 21. Plaintiff explains that he has

an "organic brain syndrome" that causes him to become easily agitated and prevents him from exercising good judgment or controlling his impulses. *Id*. at ¶ 34. Plaintiff claims that he was not a threat to himself nor others and alleges that Defendant ordered the injection of "dangerous drugs" merely to stop him from making further complaints against the officers. *Id*. at ¶¶ 22-23. Plaintiff also denies refusing his dinner on April 8, 2002, and instead asserts that correction officers failed to provide him with a meal. *Id*. at ¶ 30.

Dr. Melendez examined Plaintiff again on April 9, 2002, and noted that his cell was clean at the time. Def.'s 7.1 Statement at ¶¶ 35-36. During this evaluation, Plaintiff claimed that a correction officer was refusing to provide him meals and advised that his food had been "poisoned" when he was in general population. *Id*. at ¶ 37. Dr. Melendez then completed a referral for Plaintiff to be transferred to the Central New York Psychiatric Center ("CNYPC") and ordered that he be given a shower. *Id*. at ¶¶ 38-39. Plaintiff was provided – and ate – breakfast, lunch, and dinner on April 9, 2002. *Id*. at ¶ 40.

On April 10, 2002, Plaintiff was found to be calm and coherent, and did not exhibit any signs of psychosis, depression, nor suicidal ideation. *Id*. at ¶ 41. As a result, Dr. Melendez canceled the referral to CNYPC and discharged Plaintiff back to general population. *Id*. at ¶ 42. Dr. Melendez further ordered that Plaintiff continue to be provided Depakene, but be taken off Risperdal. *Id*. at ¶ 43. However, Plaintiff continued to refuse all medications until April 19, 2002, at which time his medication was discontinued. *Id*. at ¶ 44.

### III.  DISCUSSION

#### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate only where

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by FED. R. CIV. P. 56(e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant."  *Nora Beverages, Inc. v. Perrier*

*Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998) (internal quotation marks and citation omitted). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B.  Exhaustion of Administrative Remedies

Defendant argues that Murray's claims against her must be dismissed because he failed to exhaust his administrative remedies before filing this action.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), an inmate is required to exhaust all administrative remedies before bringing an action regarding prison conditions. 42 U.S.C. § 1997e(a) (2006). This exhaustion requirement applies to all suits concerning prison life, including those alleging excessive force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A plaintiff must exhaust all available remedies even if the prison grievance system cannot provide the specific type of relief sought, *i.e.*, money damages. *Id*. at 524; *Booth v. Churner*, 532 U.S. 731, 741 (2001).

In order to satisfy the exhaustion requirement, a plaintiff must complete the administrative review process in accordance with the applicable procedural rules of the facility, appealing decisions to the highest administrative level provided for in the process before bringing suit in federal court.

*Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516. Putting prison officials on notice of the underlying substantive allegations through informal channels is an insufficient substitute for procedurally exhausting all available administrative remedies. *See Macias v. Zenk*, 495 F.3d 37, 43-44 (2d Cir. 2007) (holding that a *pro se* inmate did not satisfy the PLRA's exhaustion requirement by filing two administrative tort claims and numerous informal complaints). This is so because "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance and the prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. at 44 (internal alterations and quotation marks omitted).

The New York State Department of Corrections and Community Services ("DOCCS") has established an inmate grievance procedure that requires an inmate to file a formal grievance within twenty-one calendar days of the incident about which he complains. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1) (2011). A grievance committee representative then has up to sixteen calendar days to resolve the complaint informally. *Id*. § 701.5(b)(1). If there is no informal resolution, the full grievance committee shall hold a hearing to answer the grievance or make a recommendation to the prison superintendent. *Id*. § 701.5(b)(2). The inmate then has seven days to appeal the grievance committee's decision to the superintendent. *Id*. § 701.5(c)(1). If the superintendent denies the grievance, the inmate has seven days to appeal the matter to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d)(1)(i).

Plaintiff did not file a grievance against Dr. Melendez specifically. However, Plaintiff filed a formal grievance on April 12, 2002, in which he complained of conduct that took place on April 2, 2002. Dkt. No. 183-2, Adrienne Kerwin, Esq., Affirm., Ex. D, Inmate Grievance CL-461606-02

(docketed at Dkt. No. 183-4).   Specifically, Plaintiff claimed that he had been held down by corrections officers and given two shots in the MHU.   *Id*.   In the same grievance, Plaintiff alleged that officers withheld meals, made him eat with his hands, threw his food on the floor of his cell, put bugs and human waste in his food, and would not allow him to shower.   *Id*.   The Superintendent denied this grievance on May 1, 2002, indicating that all involved employees had been contacted and had refuted the allegations.   *Id*.   Plaintiff appealed this decision to the CORC on May 6, 2002. *Id*.   On May 29, 2002, CORC upheld the determination of the Superintendent and found Plaintiff's complaints to be without merit.   *Id*. at 7.   CORC specifically noted that "Doctor M. ordered two shots for the grievant, which were administered on 4/8/02 during the day shift."   *Id*.

Therefore, Plaintiff indeed exhausted his available administrative remedies by timely filing a grievance and appealing it all the way to the CORC.   Although Murray may not have articulated the identical claims against Dr. Melendez that are alleged in this action, he adequately put prison officials on notice of the underlying substantive allegations – including his claims that officers held him down so he could be injected with medication, withheld meals, forced him eat with his hands, threw his food on the floor, contaminated his food, and prevented him from bathing.   Indeed, prison administrators claimed to have investigated the allegations thoroughly.   *Id*.; *see also* Dkt. No. 188, Joel Murray Decl., dated Apr. 5, 2011, Ex. A (docketed at Dkt. No. 188-1).   The purpose of the PLRA's exhaustion requirement was thus satisfied.

### C.  Eighth Amendment Claims

Plaintiff maintains that Dr. Melendez violated his Eighth Amendment rights by ordering him to be forcibly restrained and injected with medication and through her failure to remedy the unsanitary conditions of his confinement.   Defendant argues that she is entitled to summary

judgment as a matter of law as there is no genuine dispute as to any material fact.

While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Prison officials must "ensure that inmates receive adequate food, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates." *Id*. (internal quotation marks omitted).

To properly state an Eighth Amendment claim, a plaintiff must establish that the defendant acted with "deliberate indifference." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). This requires a showing of both an objective and subjective element. *Id*. Objectively, the defendant's acts or omissions must be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834. Subjectively, the defendant must have acted with a "sufficiently culpable state of mind." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted). This requires proof that the defendant knew of but disregarded an excessive risk to the plaintiff's health or safety. *Id*.; *see Farmer v. Brennan*, 511 U.S. at 839-40 (noting that this standard is analogous to criminal recklessness).

### 1. Injection of Medication

Plaintiff argues that there exists a genuine issue of material fact as to whether Dr. Melendez violated his Eighth Amendment rights by ordering him to be injected with "dangerous drugs" without his consent.

Prior to assessing the two Eighth Amendment prongs, the Court notes that it is well-established that mere disagreement over diagnosis and treatment does not subject the involved prison official to liability. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "[A] doctor will not

be liable under § 1983 for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment.'" *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).  Moreover, if the defendant acted reasonably in response to the inmate's health risk, she cannot be held liable under the Eighth Amendment.  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).  In New York, a patient's right to refuse medication may be disregarded "only in narrow circumstances, including those where the patient presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution."  *Kulak v. City of New York*, 88 F.3d at 74 (internal quotation marks omitted).

The record shows that Dr. Melendez's decision to have an injection of Haldol/Atarax/Cogentin administered to Murray on April 8, 2002, to calm him down and ensure his safety and the safety of prison staff was reasonable.  Murray acknowledges that he was placed in the MHU because he was experiencing "an acute mental health crisis."  The medical record is replete with notations documenting his inappropriate behavior, agitated state, and refusal of medication while in the MHU from April 2 until the April 8, 2002 incident.  *See* Kerwin Affirm, Ex. B, Medical R. at pp. 25-29 (docketed at Dkt. No. 184).  The medical record also indicates that Plaintiff became increasingly hostile throughout the day on April 8, continued to yell and curse, and threatened an MHU social worker with "physical and sexual violence."  *Id*. at 28–29.  Murray admits that he was very agitated at the time and "cursed out" staff.  Plaintiff further maintains that he suffers from an "organic brain syndrome" that causes him to become easily agitated and prevents him from exercising good judgment or controlling his impulses.  Moreover, Plaintiff admittedly refused to take

his prescription medication everyday during this time period.

This evidence indicates that Murray presented a danger to himself and prison staff.  Dr. Melendez's decision to have medication forcibly administered in such a situation was reasonable, and in no way violated the Eighth Amendment.[5]  *See Kulak v. City of New York*, 88 F.3d at 74 (granting summary judgment to a prison doctor who forcibly administered Haldol to an inmate who was "extremely angry," had an extensive history of mental illness, and was considered "imminently likely to engage in conduct posing a risk of physical harm to himself and others").  In response, Plaintiff merely asserts that his agitation was justified by the actions of prison staff.  The reason for Plaintiff's agitation is immaterial and is insufficient to create an issue of fact for trial.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **granted** as it relates to her decision to have Haldol/Atarax/Cogentin forcibly administered to Plaintiff on April 8, 2002.

### 2.  Excessive Force

Murray alleges that Defendant Melendez "ordered" correction officers to use excessive force to restrain him on April 8, 2002, so that he could be injected with medication.

When considering an excessive force claim against prison officials, the main focus is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

---

[5] Though not specifically stated in his Second Amended Complaint, in an abundance of caution, the Defendant also claims that the injection of medication did not violate Plaintiff's due process rights under the Fourteenth Amendment.  Dkt. No. 183-7, Def.'s Mem. of Law, at pp. 9-10; *see also* 2d Am. Compl. at ¶ 38.  While Plaintiff possesses the liberty interest in remaining free from forced medication, in an "emergency, an inmate jeopardizing his own or the institution's safety may be forcibly medicated."  *Doe v. Dyett*, 1993 WL 378867, at *2 (S.D.N.Y. Sept. 24, 1993).  As noted above, Plaintiff presented a danger to himself and to prison staff, thus justifying the forced medication.  As the Supreme Court noted, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."  *Washington v. Harper*, 494 U.S. 210, 226 (1990).  Thus, to the extent Plaintiff's Second Amended Complaint can be read as raising a due process violation, the Court would recommend granting Defendant's Motion for Summary Judgment on such claim.

*-11-*

sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)

(internal quotation marks omitted); *see also Blyden v. Mancusi*, 186 F.3d 252, 264 n.5 (2d Cir. 1999)

(noting that the inquiry outlined in *Hudson* applies "where a supervisor's liability is predicated on

[her] role in planning the use of force").[6]  The extent of an inmate's injury, although relevant, is only

one of the factors to be considered when determining if an official's use of force was "unnecessary

and wanton." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  Courts should also take into account

the need for force, whether the force was proportionate to that need, the threat perceived by officials,

and what was done to limit the amount of force used.  *Id.*

Here, there is no indication that Murray was injured as a result of being restrained and

injected with medication against his will.  Moreover, as explained above, the decision to take such

action was a reasonable response to the threat Plaintiff posed to his own safety as well as to those

around him on April 8, 2002.  Plaintiff was admittedly agitated, yelled and swore at prison staff, and

suffered from a condition that prevented him from controlling his impulses.  There is nothing in the

record suggesting prison officials – at Defendant's order – used anything more than *de minimis* force

for a limited period of time for the purpose of restoring order.  Save for Plaintiff's conclusory

assertion that Dr. Melendez ordered such action merely to silence his complaints, there is nothing

to indicate that Defendant or the officers involved acted maliciously and sadistically for the very

purpose of causing harm.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **granted**

as to Plaintiff's excessive force claim.

---

[6] For purposes of this analysis, it is assumed that Dr. Melendez exercised supervisory authority over the involved correctional officers and had the ability to "order" them to restrain Murray.  It is noted, however, that Dr. Melendez claims to have "had no authority over, or supervisory duties with respect to, any corrections staff." Dkt. No. 183-5, Maria Melendez, M.D., Decl., dated Jan. 25, 2011, at ¶ 5.

### 3.  Conditions of Confinement

Plaintiff alleges that Dr. Melendez was aware of the unsanitary condition of his MHU cell and that officers were putting human waste in his food.  Plaintiff further claims that Defendant knew he was not being provided meals, was forced to eat with his hands, and was not permitted to shower.  Despite this knowledge, according to Murray, Dr. Melendez failed to take any remedial action.  Defendant argues that she was not personally involved in any of the conduct related to the condition of Murray's confinement.

The personal involvement of a defendant is an essential element of a § 1983 claim.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  It has been established that a supervisor cannot be sued solely by virtue of being a supervisor because there is no *respondeat superior* liability under § 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  The "mere 'linkage in the prison chain of command' is insufficient to implicate [prison administrators] in a § 1983 claim."  *Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  However, a supervisor may be held liable under § 1983 by one or more of the following:  (1) direct participation in the constitutional deprivation; (2) failure to remedy a wrong after learning about it through a report or appeal; (3) creation of a policy that sanctioned the violative conduct or allowed such conduct to continue; (4) grossly negligent supervision of personnel who committed the violation; or (5) failure to act after receiving information indicating that constitutional violations were occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d at 501).

Whether all five *Colon* bases for supervisor liability remain available in light of the Supreme

*-13-*

Court's decision in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948-49 (2009), has been debated by the district courts. *McCarroll v. Fed. Bureau of Prisons*, 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (Lowe, M.J.) (noting that although the Second Circuit has not yet addressed *Iqbal*'s impact on the five *Colon* categories, several district courts have determined that it "nullified" some); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (citing, but disagreeing with, several recent decisions that interpreted *Iqbal* as eliminating all but the first and third *Colon* categories).

Even assuming, *arguendo*, that (1) Dr. Melendez acted in a supervisory role over the corrections officers at Clinton,[7] and (2) all five *Colon* categories survived *Iqbal*, Plaintiff cannot establish the personal involvement of Dr. Melendez for the majority of the conditions he complains of. Importantly, Plaintiff does not allege that Dr. Melendez was directly involved in contaminating his food, withholding his meals, forcing him to eat with his hands, or preventing him from bathing. Instead, Plaintiff appears to rely on the second and fifth *Colon* categories and claims Defendant failed to take corrective action when advised of certain conditions. As such, "a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it." *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.")

During Defendant's first evaluation of Murray in the MHU on April 3, 2002, he complained

---

[7] As noted above, Dr. Melendez maintains that she had no supervisory authority over corrections officers at Clinton during the relevant time period.

that he was forced to eat in his cell instead of in the mess hall and was not permitted to shower or use the yard when he was housed in general population. Def.'s 7.1 Statement at ¶ 8; Dkt. No. 184 at p. 25. To the extent Murray complained about the condition of his confinement in general population, such complaints involved conduct that had already occurred and were no longer ongoing at the time when he spoke to Dr. Melendez in the MHU. Further, Plaintiff does not allege that Dr. Melendez had any control over or supervisory authority necessary to remedy the conditions of his confinement anywhere other than the MHU. As such, Defendant cannot be held liable for past violations of Plaintiff's right to be housed in humane conditions, which allegedly occurred outside the MHU.

The medical records indicate that the only allegedly violative ongoing conduct Dr. Melendez was personally aware of related to Murray's continued lack of access to showering facilities and the unsanitary condition of his MHU cell. The record also shows that Dr. Melendez took appropriate actions to remedy the conditions of which she was made aware. On April 2, 2002, a nurse in the MHU, A. Welsh, documented Plaintiff's complaint about not being permitted to shower and noted that he had "a body odor." Dkt. No. 184 at p. 23. However, Dr. Melendez was not aware of these complaints or the unsanitary condition of Murray's cell until later in his stay in the MHU.

On April 3, 2002, Plaintiff again complained to Defendant that he was not was not being permitted regular showers.[8] *Id*. at p. 25. Although Defendant apparently did not order that Murray be given a shower until April 9, 2002, Plaintiff fails to identify any harm he suffered as a result of not being provided a shower until that date. These allegations are insufficiently serious to sustain

---

[8] The following day, Plaintiff reportedly urinated on the door to his cell, causing urine to seep out from underneath the door. Dkt. No. 184 at p. 26. While there is no indication that Murray's cell was cleaned, there is also nothing to indicate that Dr. Melendez was present nor made aware of this incident. *See id*. (entry relating to this incident made by a nurse with the initials "R.L.").

*-15-*

an Eighth Amendment conditions-of-confinement claim. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 296-97 (N.D.N.Y. 2003) (allegations that shower stalls had rust bubbles, birds were permitted to fly within the cells, and that the prison had "cockroach problems" were insufficient to state an Eighth Amendment claim, especially since plaintiff failed to identify how he was harmed by such conditions). Dr. Melendez observed the unsanitary condition of Plaintiff's cell on April 8, 2002, and had him moved to a clean cell that same day. Dkt. No. 184 at p. 29.

Moreover, Plaintiff admittedly refused prescription medications and several meals while he was housed in the MHU. This belies his claim that meals were withheld from him or that Defendant failed to remedy the officers' alleged ongoing failure to provide him meals. In short, Murray fails to set out any facts showing the existence of a genuine issue for trial related to Defendant's culpability for the conditions of his confinement. He instead relies on conclusory allegations and mere denials of the facts put forth by Defendant.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **granted** as to Plaintiff's conditions-of-confinement claim.

### D. Qualified Immunity

Because Plaintiff cannot establish that Defendant violated his constitutional rights, "'there is no necessity for further inquiries concerning qualified immunity.'" *L.A. Cnty. v. Rettele*, 550 U.S. 609, 616 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 183) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:    September 13, 2011
         Albany, New York



_____
RANDOLPH F. TREECE
United States Magistrate Judge



*-17-*