UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOEL MURRAY,

                              Plaintiff,

                                                                                       9:03-CV-1263
v.                                                                                      (GTS/RFT)

DR. M. MELENDEZ, Clinton Corr. Facility,

                              Defendant.
_____

APPEARANCES:

JOEL MURRAY
  Plaintiff, *Pro Se*
472 West 147 Street
Apt. #4
New York, New York 10031

HON. ERIC T. SCHNEIDERMAN                    ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York       Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this *pro se* prisoner civil rights action filed by Joel Murray ("Plaintiff") against Dr. Maria Melendez, M.D., a psychiatrist formerly employed at Clinton Correctional Facility ("Defendant"), are (1) Defendant's motion for summary judgment (Dkt. Nos. 183, 184), and (2) United States Magistrate Judge Randolph F. Treece's Report-Recommendation recommending that Defendant's motion be granted (Dkt. No. 190). For the reasons set forth below, Magistrate Judge Treece's Report-Recommendation is accepted and adopted in its entirety; Defendant's motion for summary judgment is granted; Plaintiff's claims against Defendant are dismissed.

I.     RELEVANT BACKGROUND

   A.     **Plaintiff's Claims**

On October 17, 2003, Plaintiff filed his Complaint in this action. (Dkt. No. 1.) On October 30, 2003, the Court issued an Order, *inter alia*, directing Plaintiff to file an Amended Complaint. (Dkt. No. 5.) On November 20, 2003, Plaintiff filed an Amended Complaint. (Dkt. No. 7.) On December 8, 2003, the Court struck Plaintiff's Amended Complaint from the docket due to Plaintiff's failure to comply with Fed. R. Civ. P. 8 and 10. (Dkt. No. 8.) On December 22, 2003, Plaintiff filed a Second Amended Complaint. (Dkt. No. 10.) On January 9, 2004, the Court accepted that Second Amended Complaint for filing. (Dkt. No. 11.)

Generally, construed with the utmost of liberality, Plaintiff's Second Amended Complaint alleges, *inter alia*,[1] that, on or about April 1, 2002, while Plaintiff was incarcerated at Clinton Correctional Facility in Dannemora, New York, Defendant violated his following constitutional rights: (1) she violated his right to be free from cruel and unusual punishment under the Eighth Amendment by failing to remedy the inadequate conditions of confinement to which he was subjected by various correctional officers working in Clinton Correctional Facility's Mental Health Unit (which included having body waste thrown in his food, being made to eat with his hands, being denied meals, being refused the ability to shower, and being forced to lay on a dirty bug-infested floor), despite having been informed of those conditions by Plaintiff; and (2) she

---

[1]     Plaintiff's claims against two other Defendants were dismissed by this Court for failure to state a claim upon which relief might be granted, on March 29, 2007. (Dkt. No. 100.) Plaintiff's claims against eleven other Defendants were dismissed by this Court for failure to state a claim upon which relief might be granted, on April 9, 2009. (Dkt. No. 151.) That latter dismissal was affirmed by the Second Circuit Court of Appeals on March 24, 2010. (Dkt. No. 160.)

violated his right to be free from cruel and unusual punishment under the Eighth Amendment, and/or his right to due process under the Fourteenth Amendment, by ordering corrections officers to use excessive force against Plaintiff so that he could be administered an injection by needle without his consent.  (Dkt. No. 10, at ¶¶ 9, 22, 38 [Plf.'s Second Am. Compl.].)

The Court notes that Plaintiff's Second Amended Complaint also raises the specter of a First Amendment free-flow-of-mail claim arising from unidentified correctional officers opening his legally privileged mail without his consent upon his discharge from the Clinton Correctional Facility's Mental Health Unit on April of 2002.  (Dkt. No. 10, at ¶¶ 22, 38.)  However, because Plaintiff alleges no facts plausibly suggesting that Defendant had a hand in opening that mail, or that Plaintiff even relayed this particular complaint to Defendant, the Court does not, even when it construes Plaintiff's Second Amended Complaint with the utmost special liberality, construe the Second Amended Complaint as asserting a First Amendment free-flow-of-mail claim against Defendant.[2]

---

[2]     The Court notes that, even if it were to construe Plaintiff's Second Amended Complaint as asserting such a claim against Defendant, the Court would find that such a claim would be dismissed due to (1) Plaintiff's having had fair notice that Defendant was moving for summary judgment on *all* of Plaintiff's claims against her, and (2) Plaintiff's failure to adduce admissible record evidence from which a rational fact finder could find that he exhausted his available administrative remedies with respect to any such claim against Defendant, that Defendant was personally involved in any such violation, and/or that Defendant is not protected from liability on that claim as a matter of law by the doctrine of qualified immunity.  The Court notes also that, while it agrees with Magistrate Judge Treece's finding that Plaintiff effectively exhausted his available administrative remedies with regard to his conditions-of-confinement, forced-medication, and excessive-force claims against Defendant (because those claims were investigated and rejected by correctional officials), Magistrate Judge Treece correctly rendered no such finding regarding Plaintiff's free-flow-of-mail claim against Defendant.  (Dkt. No. 190, at 7-8.)

      **B.**    **Defendant's Motion for Summary Judgment**

On January 25, 2011, Defendant filed a motion for summary judgment. (Dkt. No. 183.) Generally, in her motion for summary judgment, Defendant asserts the following three arguments: (1) Plaintiff has failed to adduce admissible record evidence from which a rational fact finder could conclude that he exhausted his available administrative remedies with regard to his claims against Defendant, before commencing this action; (2) even if he has adduced such evidence, Plaintiff has failed to adduce admissible record evidence from which a rational fact finder could conclude that Defendant violated either (a) his right to be free from cruel and unusual punishment under the Eighth Amendment, or (b) his right to due process under the Fourteenth Amendment; and (3) even if he has adduced such evidence, Defendant is protected from liability as a matter of law by the doctrine of qualified immunity, based on the current record evidence. (Dkt. Nos. 183, 184.)

On April 8, 2011, after having been granted an extension of time in which to do so, Plaintiff filed a response to Defendant's motion. (Dkt. Nos. 187, 188.) Generally, construed with the utmost of special liberality, Plaintiff's response asserts the following two arguments: (1) a genuine issue of material fact exists on Plaintiff's conditions-of-confinement claim under the Eighth Amendment, because he has adduced admissible record evidence from which a rational fact finder could find that Defendant both [a] "authorized" and "condoned" corrections officers to subject him to inadequate conditions of confinement, and [b] failed to remedy these conditions after Plaintiff complained of them "on numerous occasions"; and (2) a genuine issue of material fact exists on Plaintiff's cruel-and-unusual punishment claim under the Eighth Amendment, and his due process claim under the Fourteenth Amendment, because he has adduced admissible

4

record evidence from which a rational fact finder could find that Defendant "ordered, directed, and supervised" corrections officers, on two occasions, to use physical force against Plaintiff through forcibly injecting him with anti-psychotic medications (when less-restrictive courses of action were available), in order to "cover up" the agitation that Plaintiff had experienced due to his inadequate conditions of confinement. (*Id*.)

### C. Magistrate Judge Treece's Report-Recommendation

On September 13, 2011, Magistrate Judge Treece issued a Report-Recommendation recommending that Defendant's motion be granted and that Plaintiff's Second Amended Complaint be dismissed for failing to state a claim against Defendant Melendez. (Dkt. No. 190.) Familiarity with the grounds of Magistrate Judge Treece's Report-Recommendation is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id*.)

As of the date of this Decision and Order, no party has filed an objection to the Report-Recommendation and the deadline by which to do so has expired.[3]

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must,

---

[3] Under the applicable rules, the time period for the filing of Objections is fourteen (14) calendar days from the date of filing of the Report-Recommendation (unless the fourteenth day is a Saturday, Sunday, or legal holiday, in which case the period continues to run until then end of the next day that is not a Saturday, Sunday, or legal holiday), plus three (3) calendar days if the Report-Recommendation was served on the objecting party by mail. *See* Fed. R. Civ. P. 72(b)(2); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(1); Fed. R. Civ. P. 6(d).

with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[4] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[5]

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.[6] Similarly, when an objection merely reiterates the *same arguments* made

---

[4] *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[5] *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

[6] *See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

6

by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[7] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id*.[8]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B.     Legal Standard Governing a Motion for Summary Judgment

Magistrate Judge Treece correctly recited the legal standard governing motions for summary judgment. (Dkt. No. 190, at 4-6.) As a result, this standard is incorporated by reference in this Decision and Order.

---

[7]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[8]     *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

III.     ANALYSIS

Because no objection was filed to Magistrate Judge Treece's Report-Recommendation, the Court need review the Report-Recommendation for only clear error. After carefully reviewing all of the papers in this action, including Magistrate Judge Treece's Report-Recommendation, and Plaintiff's Objection thereto, the Court concludes that Magistrate Judge Treece's thorough Report-Recommendation is correct in all respects. (Dkt. No. 190.) Magistrate Judge Treece employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id*.) As a result, the Court adopts the Report-Recommendation in its entirety for the reasons stated therein.

The Court would add only four points. First, Magistrate Judge Treece's thorough Report-Recommendation would survive even *de novo* review.

Second, of the factual assertions contained in the 46 paragraphs of Defendant's Rule 7.1 Statement (each of which is supported by one or more accurate record citations), Plaintiff expressly admits all of the factual assertions contained in 26 of those paragraphs.[9] Of the factual assertions contained in the remaining 20 paragraphs, Plaintiff effectively admits (under Local Rule 7.1[a][3]) the factual assertions contained in 19 of those paragraphs. This is because, in support of those denials, he fails to (1) cite any record evidence,[10] (2) cite admissible record

---

[9]     (*Compare* Dkt. No. 183, Attach. 6, at ¶¶ 1-9, 12-15, 17, 20, 25, 29, 31-33, 36, 39-43 *with* Dkt. No. 187, Attach. 1, at ¶¶ 1-9, 12-15, 17, 20, 25, 29, 31-33, 36, 39-43.)

[10]    In four of his paragraphs, Plaintiff fails to cite to any record evidence. (Dkt. No. 187, Attach. 1, at ¶¶ 19, 23, 27, 28.) The Court notes that any attempt by Plaintiff to transform his Rule 7.1 Response itself into admissible record evidence by inserting a verification (pursuant to 28 U.S.C. § 1746) at the end of it is to no avail. *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *3 (N.D.N.Y. June 20, 2008) (Report-Recommendation by Lowe, M.J., adopted by Hurd, J.) (citing cases).

evidence,[11] or (3) cite admissible record evidence that actually supports his denial of the fact(s) asserted by Defendant.[12] This leaves only one paragraph in which Plaintiff effectively denies facts asserted by Defendant. (Dkt. No. 187, Attach. 1, at ¶ 45.) The problem is that this factual dispute is immaterial to any argument other than an argument that Defendant lacked personal involvement in the allegedly unconstitutional decision to forcibly medicate Plaintiff; and Defendant makes no such argument. Rather, she argues merely that she lacked personal involvement in the unconstitutional conditions of confinement that Plaintiff allegedly experienced. (Dkt. No. 183, Attach. 7, at 9 [attaching page "7" of Def.'s Memo. of Law].) For these additional reasons, Plaintiff has failed to create a genuine issue of material of fact on Defendant's motion.[13]

---

[11] In six of his paragraphs, Plaintiff cites only his grievance in support of his denials. (Dkt. No. 187, Attach. 1, at ¶¶ 10, 11, 16, 18, 30, 37.) Plaintiff's grievance is neither notarized nor verified pursuant to 28 U.S.C. § 1746. (Dkt. No. 188, Attach. 1, at 6-10.) As a result, it is not admissible evidence for purposes of Defendant's motion for summary judgment, but rather a collection of mere allegations. *Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *13, n.105 (N.D.N.Y. Nov. 5, 2007) (Report-Recommendation by Lowe, M.J., adopted by McAvoy, J.) [collecting cases]. The Court notes that the fact that Plaintiff grieved issues to the Inmate Grievance Committee on April 11, 2002, is not probative of whether he communicated those issues to Defendant on April 4, 2002 and/or April 9, 2002. (Dkt. No. 187, Attach. 1, at ¶¶ 10, 37.)

[12] In eight of his paragraphs, Plaintiff fails to cite to admissible record evidence that actually supports his denial of the facts asserted by Defendant; rather, the record evidence he cites either supports *other* factual assertions or actually *undermines* his denial. (Dkt. No. 187, Attach. 1, at ¶¶ 21, 22, 24, 26, 34, 35, 38, 44, 46.) For example, in Paragraph 44, Plaintiff denies that his medications were discontinued on April 19, 2002, because he had refused them; rather, he asserts, they were discontinued because someone placed them on "hold." (*Id*. at ¶ 44.) However, in support of that denial, he cites pages 40 and 41 of Exhibit B to Attorney Kerwin's Affirmation, which clearly indicate that Plaintiff's medications were placed on hold on April 19, 2002, after he refused his medications every day between April 5 and April 18, 2002. (Dkt. No. 184, at 43-44 [attaching pages "40" and "41" to Ex. B. to Kerwin Affirm.].)

[13] Even *pro se* litigants must comply with Local Rule 7.1(a)(3) of the District's Local Rules of Practice, as the Court explained in its Decision and Order of April 9, 2009. (Dkt. No. 151, at 7-9 & nn. 5-9.) The Court notes that, before Plaintiff prepared his Rule 7.1 Response

Third, when stripped of their conclusory allegations of malice and a "cover up," Plaintiff's claims against Defendant are, in essence, claims that she acted carelessly in her supervision of correctional staff with regard to the conditions in Plaintiff's cell and the administration of his medications. Even assuming the record contained evidence from which a rational fact finder could find such negligence, negligence is not actionable under 42 U.S.C. § 1983.[14]

Fourth and finally, while Magistrate Judge Treece did not render a finding on Defendant's alternative defense of qualified immunity (due to the fact that Plaintiff had not established a

---

on April 5, 2011 (Dkt. No. 187, Attach. 1, at 12), he received due notice of the consequences of failing to comply with Local Rule 7.1(a)(3). (*See, e.g.*, Dkt. No. 135, at 3; Dkt. No. 151, at 8, 10-11; Dkt. No. 183, Attach. 1.) The Court notes also that, before Plaintiff filed his Rule 7.1 Response, he had previously filed three responsive statements of material fact on motions for summary judgment in *pro se* prisoner civil rights cases in federal district courts, two in this District. *See Murray v. Sudolnik*, 00-CV-5544, Plf.'s Responsive Stmt. of Material Facts (S.D.N.Y. filed March 5, 2002); *Murray v. Pataki*, 93-CV-1263, Plf.'s Responsive Stmt. of Material Facts (N.D.N.Y. filed June 3, 2008); *Murray v. Ramineni*, 08-CV-0809, Plf.'s Responsive Stmt. of Material Facts (N.D.N.Y. filed Feb. 22, 2011). Finally, the Court notes that, at the time Plaintiff filed his Rule 7.1 Response, copies of the District's Local Rules of Practice and *Pro Se* Handbook were on file at the correctional facility at which Plaintiff was incarcerated.

[14]   *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' . . . [T]he Fourteenth Amendment is not a 'font of tort law.' . . . It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable. . . . '[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process.'") [citations omitted]; *Riddick v. Modeny*, No. 07-1645, 2007 WL 2980186, at *2 (3d Cir. Oct. 9, 2007) ("The protections afforded prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials.").

violation of his constitutional rights), the Court finds that, even if Plaintiff had established a violation of his constitutional rights, the Court would find and does find, as an alternative ground for granting Defendant's motion, that she is protected from liability as a matter of law, on each of Plaintiff's claims, by the doctrine of qualified immunity. The Court makes this finding for the alternative reason stated by Defendant on page 11 of her memorandum of law.[15]

ACCORDINGLY, it is

ORDERED that Magistrate Judge Treece's Report-Recommendation (Dkt. No. 190) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

ORDERED that Defendant's motion for summary judgment (Dkt. No. 183) is **GRANTED**, and Plaintiff's Second Amended Complaint (Dkt. No. 10) is **DISMISSED** in its entirety. The clerk is directed to enter judgment and close this case.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from this Decision and Order would not be taken in good faith.

Dated: September 30, 2011
       Syracuse, New York

_Hon. Glenn T. Suddaby_
U.S. District Judge

---

[15] (Dkt. No. 183, Attach. 7, at 13 [arguing that "Dr. Melendez is nonetheless entitled to qualified immunity since it was objectively reasonable for her to believe that no action they took – or failed to take – with respect to plaintiff violated plaintiff's constitutional rights. Dr. Melendez treated the plaintiff in accordance with accepted psychiatric standards, and directed that the plaintiff be placed in a clean cell. Based on these facts, the plaintiff cannot show that Dr. Melendez did not act reasonably and in good faith."].)